Minnie Simon, Appellee, v. William Nelson Pelouze et al., Appellants.

Gen. No. 34,552.

Opinion filed October 21, 1931.

Rose & Symmes, for appellants.

Irving G. Zazove, for appellee; John B. King, of counsel.

Mr. Justice Friend delivered the opinion of the court.

Minnie Simon, as plaintiff, filed an action on the case against William Nelson Pelouze, M. L. Harris, W. J. Mohr and W. M. Thompson, as copartners operating the Henrotin Hospital, and as trustees and servants of Chicago Policlinic, a corporation not for profit, to recover damages for injuries caused by the falling of an elevator in said hospital while she was a passenger therein. Pelouze and Mohr were the only defendants served, the others being dismissed from the proceeding. The case was tried before the court and jury, resulting in a verdict and judgment for the sum of $2,500.

The original declaration contained five counts, none of which charged the defendants as copartners, but as officers, directors, trustees, agents, supervisors and servants of Chicago Policlinic, a corporation not for profit, and alleged that on the 9th day of December,

1927, said corporation was the owner of the building located at 939 North La Salle street, in the City of Chicago, and the defendants were the officers, directors, trustees, agents, supervisors and servants of said Chicago Policlinic, and as such used, managed, maintained, kept, operated, controlled and supervised therein a public hospital known as Henrotin Hospital, and in connection therewith used, managed, maintained, kept, operated, controlled and supervised a certain passenger elevator; that on the date and place aforesaid plaintiff was invited to visit a patient of the defendants and while she was riding upon said elevator and was in the exercise of all due care and caution for her own safety, as a direct and proximate result of the negligence, carelessness and improper conduct of the defendants, said elevator was caused to and did fall or drop, thereby seriously injuring the plaintiff.

As to specific negligence, the first of said counts alleged that it was the duty of the defendants to inspect the elevator so that if it became defective in any way the defect might be discovered, but that therein the defendants failed and as the direct and proximate result thereof the elevator fell, causing the injuries complained of. The second count alleged that it was the duty of the defendants to manage, maintain and operate the elevator so that those riding upon it would not be subject to any injury, by equipping it with a governor or some other safety device, but that in this regard the defendants failed in their duty. The third count alleged that it was the duty of the defendants to safeguard the elevator as alleged in the second count, but that the defendants negligently, carelessly and improperly maintained and supervised the elevator in a loose, defective and dangerous condition and neglected to inspect the safety device thereon. The fourth count alleged it to be the duty of defendants

to use, manage, maintain, control and supervise the elevator so that it would not fall, but that they disregarded this duty and as a result of their negligence in this behalf the elevator fell, causing the injuries complained of. The fifth count alleged that it was the duty of the defendants to use, manage, control and supervise the elevator so that those who might be upon it would not be subject to any injury, but that the defendants disregarding their duty in this behalf negligently and carelessly failed and neglected to exercise ordinary care.

To this declaration a plea of the general issue was interposed by the defendants Pelouze and Mohr, and also a plea by which they denied that they were copartners operating the Henrotin Hospital, and that they or either of them, as officers, directors, trustees, agents, supervisors or servants of the Chicago Policlinic, managed, maintained, controlled or supervised the Henrotin Hospital.

Under the issues so formed the plaintiff endeavored to show that the defendants were liable for the falling of the elevator, and to that end she testified as to the manner of the accident and the extent of her injuries.

As to the connection of the defendants with the accident, plaintiff offered the testimony of Hazel G. Taylor, who had been an employee of the Henrotin Hospital for about seven years. Miss Taylor testified that her immediate superior was Miss Miller, whose superior in turn was the board of directors; that she had seen Pelouze around the hospital several times, but had never seen him do anything but walk in the lobby to and from Miss Miller's office; that she was paid by the Chicago Policlinic Hospital; that neither Pelouze nor Mohr had ever given her orders of any kind; that she knew that Mohr and Pelouze were on the board but that they had nothing to say to her or any one else that she knew of.

Plaintiff further offered the testimony of Dr. M. L. Harris, who testified that he was a surgeon connected with the Henrotin Hospital; that the superintendent had supervision of the hospital and was employed by the board of trustees, which included the two defendants herein; that the superintendent ran the hospital and had no superior, and that her conduct was not supervised by the board of trustees; that the superintendent conducted everything herself and the board did not superintend the Henrotin Hospital. Dr. Harris further testified that the superintendent was an employee of the trustees of Policlinic, of which Henrotin is a branch; that Henrotin Hospital was a hospital under, and a part of the Chicago Policlinic, and that it had no legal or corporate existence in itself.

At the close of Dr. Harris' testimony plaintiff rested her case, and the defendants Pelouze and Mohr, and each of them separately, moved the court for a directed verdict, which was denied.

Pursuant to the ruling on this motion defendants produced evidence disclosing substantially that the Chicago Policlinic built the Henrotin Hospital; that it was and always had been a part of the Chicago Policlinic, owned by it and built by it, and that "Henrotin" was just a name; that the trustees, including the defendants, Pelouze and Mohr, were trustees of the Chicago Policlinic; that if the Henrotin Hospital had any surplus it belonged to the Chicago Policlinic, an institution organized for charity, having no stock and managed by a board of trustees who acted without pay; that if there was any surplus it was used in carrying on the charitable business of the Policlinic in taking care of the poor and sick in the out department and in the hospital; that Henrotin and Policlinic were one institution and the bills of Henrotin were all paid by the Policlinic; that the buildings owned by the Chicago Policlinic included the Henrotin building and that

they were all operated through the Policlinic; that defendants were trustees of the Policlinic and hired the superintendent who conducted the hospital; that neither of the defendants had ever given any orders nor had they anything to do with the operation of the elevators; that defendants had never been in partnership with other trustees and did not operate the Henrotin Hospital as a partnership; that the night superintendent hired the engineer of the Henrotin Hospital, who in turn engaged his assistants, and that the engineer had been instructed by the superintendent to have the elevator inspected every week, and that if there was anything wrong with its mechanism to report the same to her.

At the close of all the evidence defendants again moved the court to direct a verdict, which motion was likewise denied and the cause submitted to the jury who found the defendants as described and charged in the original declaration guilty and assessed plaintiff's damages in the sum aforesaid.

After verdict plaintiff moved the court for leave to amend the praecipe and summons so that the defendants should be described and charged as ''William Nelson Pelouze and W. J. Mohr; and William Nelson Pelouze, Trustee and W. J. Mohr, Trustee, operating Henrotin Hospital,'' and for leave to file an amended declaration. Pursuant to the allowance of this motion an amended declaration of eight counts was filed in which the defendants were described in the title of the cause as in the amended praecipe and summons, but in the first and fourth counts of which they were described and charged as individuals, and in the second, third, fifth, sixth, seventh and eighth counts they were described and charged as trustees operating Henrotin Hospital.

To the amended declaration a special demurrer was interposed; which being overruled, the defendants

pleaded general issues and special denials to the different counts and to these pleas the plaintiff replied. On the issues so formed the defendants' motions for a new trial and in arrest of judgment were overruled and judgment was entered on the verdict against the defendants, both as individuals and as trustees.

Defendants urge a reversal upon various grounds, including the giving and refusal of instructions and the permission of the trial court to amend the praecipe and summons and in permitting plaintiff to file the amended declaration and requiring defendants to plead thereto. In the view that we take, however, it will be unnecessary to discuss all of these grounds.

Chicago Policlinic being a charitable institution is not liable for the negligence of its servants. (*Board of Review of Cook County v. The Chicago Policlinic,* 233 Ill. 268.) And the corporation not being liable, this action was brought against two of its trustees. To that end they were charged in various counts of the original declaration as officers, directors, trustees, agents, supervisors and servants of the Policlinic; and in certain counts of the amended declaration they were charged personally and in others as trustees operating Henrotin Hospital.

Under the original declaration upon which the case was tried, plaintiff offered evidence tending to show that the defendants were trustees of the Policlinic, but gave no evidence showing that they personally were guilty of any negligence whatsoever, either of omission or commission. The record simply shows that they were trustees of the corporation and that the accident occurred, causing the injuries complained of. Upon this state of the record we are of the opinion that defendants' motion for a directed verdict should have been allowed for the following reason: A trustee or director of a corporation is not liable for the negligence of the corporation by its servants,

unless he has participated in such negligence. This doctrine was laid down in the early case of *Peck v. Cooper,* 8 Ill. App. 403. There suit was brought against the stockholders of a corporation, one of whom, Ferdinand W. Peck, was also president, and it was held that on the evidence there could be no recovery against the directors because none of them had participated in the tortious act complained of, which was the ejecting of a negro from a bus. The case was retried as against Ferdinand W. Peck and judgment entered against him on the ground that he had participated in the wrongful act. This decision is reported in 13 Ill. App. at page 27. The judgment in the second trial was reversed, and upon the third trial a verdict was returned against Peck on the ground that he had promulgated the order of eviction and thus participated in the tortious act, and judgment was rendered against him. The last judgment was sustained in 112 Ill. 192. The doctrine thus enunciated is amply sustained by other authority. Cyclopedia of the Law of Private Corporations, page 3773, in which it is stated that ''To make an officer of a corporation liable for the negligence of the corporation there must have been upon his part such a breach of duty as contributed to, or helped to bring about, the injury; that is to say, he must be a participant in the wrongful act.'' *Bath v. Caton,* 37 Mich. 199, 14A Corpus Juris, 176, wherein it is stated that ''a director or officer is not, merely by virtue of his position, liable in all cases for the torts of other directors, officers or agents; he is liable when, and only when, he participated in the tortious act, authorized or directed it, or acquiesced in it when he either knew or by the exercise of reasonable care should have known of it, and should have objected and taken steps to prevent it.''

The evidence disclosed by this record does not show any act of either defendant which in any wise con-

tributed to cause the falling of the elevator in question, but shows only that defendants were at the time of the accident trustees of the Chicago Policlinic, which conducts the Henrotin Hospital in which the elevator fell.

Plaintiff insists, however, that Henrotin Hospital is a unity and not a part of Chicago Policlinic, and in support of its contention relies on evidence showing that Henrotin had its own telephone number, stationery, bills and other indicia of being a separate unit. Plaintiff also urges that Henrotin Hospital yielded a considerable monthly profit, indicating that it was not a charitable institution. In this connection it is urged that the capacity in which the Henrotin Hospital was operated, by whom, and the character of its organization were proper questions for the jury. We cannot agree with this contention, however. While it is true that there were certain indicia of the separate unity, such as stationery, telephone listings and bills, the evidence clearly establishes the fact that Henrotin was an integral part of, owned and operated by Chicago Policlinic, through its trustees. Chicago Policlinic was in existence long before the Henrotin addition was constructed. The evidence shows that Dr. Henrotin, who had for many years been connected with Chicago Policlinic, received from one of his patients named Barrett the property upon which the Henrotin Hospital was constructed as a donation for Chicago Policlinic. The Henrotin building was financed by a bond issue and private donations to the Chicago Policlinic Institute. During the course of its construction Dr. Henrotin died, and the so-called addition to the Chicago Policlinic Institute was named in memory of Dr. Henrotin. The evidence does disclose the fact that the Henrotin Hospital yielded a considerable annual profit. This entire surplus, however, was turned back to the Chicago Policlinic and used for

charitable purposes. According to the evidence all bills of the Henrotin Hospital, including insurance, help and maintenance expenses, were paid by Chicago Policlinic, and there is no evidence to sustain the contention that Henrotin was a separate unity, except for matters of convenience, nor is there any evidence to sustain the contention that Henrotin Hospital was operated by the trustees as trustees of Henrotin Hospital. Under the circumstances we hold that there was no evidence to support the allegations of plaintiff's declaration. Furthermore whatever evidence there may be in the record with reference to the relationship between Chicago Policlinic Institute and Henrotin Hospital was adduced by defendants after plaintiff had rested her case. Plaintiff's case in chief under the original declaration established only the facts that defendants were trustees of the Policlinic and that an accident occurred causing the injuries complained of. This proof is not sufficient under the original declaration to make plaintiff's case, and hence the court should have directed a verdict for defendants at the close of plaintiff's case.

For the reasons stated, the judgment of the circuit court will be reversed with findings of fact.

*Reversed with findings of fact.*

HEBEL, P. J., and WILSON, J., concur.

Findings of fact: We find as a matter of fact that defendants were trustees of Chicago Policlinic, a corporation not for profit, organized for charitable purposes; that Henrotin Hospital is a part of and operated by Chicago Policlinic, a corporation; that Henrotin Hospital is unincorporated and had no legal entity; that defendants did not participate in any act directly contributing to plaintiff's injuries and therefore are not individually liable.