(No. 1787— ■■■■■■■■)

LILLIE BELL JONES, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 26, 1934.*
*Rehearing denied October 9, 1934.*

DAVID J. MADDOX, for claimant.

OTTO KERNER, Attorney General; CARL DIETZ, Assistant Attorney General, for respondent.

Mr. Chief Justice Hollerich delivered the opinion of the court:

The claimant, Lillie Bell Jones, seeks to recover damages for personal injuries which she claims to have sustained on August 23, 1930 as the result of a tonsillectomy performed on her at the Illinois Eye and Ear Infirmary, a State charitable institution located at Chicago, at a time when she was a charity patient at such institution.

The claimant had previously had trouble with her tonsils, and was advised by her family physician that they should be removed. Being financially unable to employ a physician to perform the operation, she went to the Illinois Eye and Ear Infirmary, 904 West Adams Street, Chicago, for that purpose. The operation was performed by an interne, and it appears from the testimony introduced on the part of the claimant, that at the time of the tonsillectomy a part of the claimant's soft palate was cut away. She claims that the operation was performed negligently and unskillfully, and that she has been seriously and permanently injured as the result thereof.

From the medical testimony introduced on the part of the claimant, it appears that she has sustained a loss of voice tone; that her hearing has been impaired; that she has difficulty in taking liquids and frequently suffers a regurgitation thereof through the nose; that such conditions are permanent; and that the loss of voice and hearing may become complete.

The Attorney General maintains that there is no liability on the part of the State for the reason that the State in the conduct and operation of institutions such as the Illinois Eye and Ear Infirmary is engaged in the exercise of a governmental function, and therefore is not liable for the

negligence of its servants and agents in connection therewith.

In the case of *Tollefson* vs. *City of Ottawa*, 228 Ill. 134, the declaration alleged that the defendant maintained and controlled a hospital in the City of Ottawa which was maintained for revenue and profit; that the defendant was received in such hospital as a pay patient, and on account of the negligence of the servants of the defendant in caring for the plaintiff, her sickness was aggravated and she thereafter died as a result thereof. A demurrer was sustained to the declaration and the plaintiff elected to abide thereby. The Appellate and Supreme Courts both upheld the trial court and held that the City of Ottawa in the conduct of such hospital was not liable under the doctrine of respondeat superior.

A similar conclusion was reached in the case of *Minear* vs. *State Board of Agriculture*, 259 Ill. 549. In that case the plaintiff was a patron of the State Fair, and paid an admission fee to enter the grounds and occupied a seat in the bleachers during the races. As a result of the defective condition of such bleachers, they broke and gave way, and the plaintiff fell to the ground and was injured. The Supreme Court there held that the State Board of Agriculture is an agency of the State in the exercise of a governmental function, and is not liable for injuries sustained as the result of its negligence. The principle of law announced in these cases is the well-settled law of this State, and was previously recognized and applied in the case of *Hollenbeck* vs. *County of Winnebago*, 95 Ill. 148 and the case of *City of Chicago* vs. *Williams*, 182 Ill. 135, as well as numerous other cases.

The rule is set forth in 13 R. C. L. 944, Section 8, as follows:

"Strictly public institutions created, owned and controlled by the State or its subdivisions, such as State asylums for the insane, city hospitals, reformatories, etc., are not liable for the negligence of their agents. The doctrine of *respondeat superior* does not apply. They are held to be governmental agencies brought into being to aid in the performance of the public duty of protecting society from the individual unfortunate or incompetent in mind, body or morals, and the rules applicable to municipal corporations and public offices generally are applied."

Such rule has been applied in many cases in this court. See:

*State Bank of Chicago, Admr. etc.* vs. *State,* 1 C. C. R. 158.
*Morrissey* vs. *State,* 2 C. C. R. 254.
*Schroeder* vs. *State,* 3 C. C. R. 36.
*Van Meter* vs. *State,* 4 C. C. R. 325.
*Burghardt* vs. *State,* 5 C. C. R. 221.
*Pelka, Admx.* vs. *State,* 6 C. C. R. 390.

Furthermore, even if the respondent were a private corporation, under the established law of this State, there would be no liability on the part of the defendant under the facts in this case.

The first case in which the question arose was the case of *Parks* vs. *Northwestern University,* 218 Ill. 381. In that case the plaintiff received injuries resulting in the loss of an eye through the negligence of one of the professors employed by the university while the plaintiff was in his charge as a student in a classroom or laboratory of the university. In that case the Supreme Court held that the university was a private corporation organized for purely charitable purposes, and being a charitable institution was not answerable for the negligent acts of its employes.

In the case of *Rogan* vs. *Chicago Lying-in Hospital,* 335 Ill. 42, the declaration alleged that the defendant was a corporation organized to provide medical care for women without homes during confinement and to care for their infants; that the plaintiff was not a charity patient but that a substantial fee was paid for his care and for that of his mother; that by reason of the negligence of the defendant, through its nurses, the plaintiff was allowed to be placed in too close proximity to a therapeutic lamp for an unreasonable length of time and his feet were severely burned. The Supreme Court there reviewed the authorities and held that the great weight of authority in the United States is to the effect that the doctrine of *respondeat superior* does not extend to charitable institutions, although admitting that there are cases in other jurisdictions which hold to the contrary.

The same rule was followed by the Appellate Court in the case of *Simon* vs. *Pelouse,* 263 Ill. App. 177.

Counsel for claimant has argued the question very thoroughly and exhaustively and has cited a number of cases from other jurisdictions, but, as said in *Hogan* vs. *Chicago Lying-in Hospital, supra,* although there are some cases in

other jurisdictions to the contrary, the great weight of authority in the United States is in accordance with the rule above set forth.

Claimant also relies for recovery upon what he calls the doctrine of social justice, or justice and equity, and refers to several decisions of this court in which awards have been made in reliance upon such doctrine.

The question as to whether this court has jurisdiction to make an award in any case upon such doctrine was exhaustively considered in the case of *Crabtree* vs. *State*, 7 C. C. R. 207, where the decisions of this court from the time of the organization of the Commission of Claims in 1877 down to the present time were reviewed. In that case, after a review of the authorities, this court reached the following conclusion, to wit:

"We conclude, therefore, that Section four (4) of Paragraph six (6) of the Court of Claims Act, which provides as follows, to-wit: The Court of Claims shall have power: 'to hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, *ex contractu* and *ex delicto*, which the State as a sovereign commonwealth, should, in equity and good conscience, discharge and pay'; merely defined the jurisdiction of the court, and does not create a new liability against the State, nor increase or enlarge any existing liability; that the jurisdiction of this court is limited to claims in respect of which the claimant would be entitled to redress against the State either at law or in equity, if the State were suable; that this court has no authority to allow any claim unless there is a legal or equitable obligation on the part of the State to pay the same, however much the claim might appeal to the sympathies of the court; that unless the claimant can bring himself within the provisions of a law giving him the right to an award, he cannot invoke the principles of equity and good conscience to secure such an award."

The same question was again before the court in the case of *Morrissey* vs. *State*, No. 2233, decided at the January Term, 1934, of this court, in which the court again reviewed the question and again held that this court had no authority to make an award, based solely on the doctrine of equity and good conscience. In the last mentioned case this court quoted from the case of *Watkins* vs. *State*, 6 C. C. R. 172, as follows:

"Claimants seem to recognize the fact their claims are not legal, for they say 'they know whatever is allowed them will be allowed out of equity and good conscience.' The statute creating the Court of Claims gives it powers to hear and determine all claims and demands, legal and equitable, which

the State, as a sovereign commonwealth, should in equity and good conscience discharge and pay. It is plain, from the language of this statute, that no claim against the State can be allowed by this court unless there is either a legal or equitable obligation of the State to pay it. Before a claimant can have an award against the State, he must show he comes within the provisions of some law making the State liable to him for the amount claimed. If he cannot point to any law giving him the right to an award, he cannot invoke the principle of equity to secure such an award. Where there is no legal liability, equity cannot create one. (10 R. C. L. Sec. 132.) Equity is not the court's sense of moral right. It is not the power of the court to decide a case according to a high standard of abstract right, regardless of the law."

The claimant has apparently sustained a serious and permanent injury, without any fault on her part, and her case appeals very strongly to the sympathies of the court, but as said in the case of *Morrissey* vs. *State of Illinois,* 2 C. C. R. 271:

"We do not make the law and can only interpret it as we find it, and much as we would like to find a judgment for the claimant in this case, considering the facts as they are, we must reject the claim."

Award must be denied. Case dismissed.