[Civ. No. 12186. Second Appellate District, Division Two.—June 8, 1939.]

CHARLES ISOM, a Minor, etc., et al., Respondents, v. CALIFORNIA JUNIOR REPUBLIC (a Corporation) et al., Appellants.

George L. Greer for Appellants.

Fred G. Goldsworthy, Victor C. Folsom and W. W. Wallace for Respondents.

WOOD, Acting P. J.—The plaintiff, Charles Isom, a minor sixteen year of age suing by his guardian *ad litem*, recovered a judgment against defendant corporation, A. W. Minard, an employee of the corporation, and Roy Smylie for injuries which he suffered when he was pushed by Smylie into an empty cement swimming pool at the institution operated by the corporation defendant. His mother, Margaret A. Isom, also recovered a judgment for expenses incurred in caring for the minor's injuries. The appeal is prosecuted from these judgments.

The trial court found that defendants Smylie and Minard were agents, servants and employees of defendant California Junior Republic; that defendant Smylie "carelessly, recklessly and willfully" pushed Charles Isom into the empty swimming pool; that defendant corporation was conducting at the time of the incident a charitable institution but that plaintiffs did not have any notice or knowledge that the corporation was conducting a charitable institution; that defendant corporation "did not exercise due care in the selection of defendant Roy Smylie as one of its servants, agents

or employees''. Defendants contend that the evidence is insufficient to sustain the findings that Smylie was an agent or employee of the corporation.

For many years prior to the incident involved in this litigation defendant corporation had conducted as a public charity a farm for vocational training maintained in part by such funds as the parents of the inmates could provide and in part by various donations, bequests and payments received from community chests of various cities in the neighborhood of the farm. The institution, which cared for about one hundred twenty-five boys, received only those who were in need of twenty-four-hour supervision. Different tasks were assigned to the boys such as farm work and machine shop work. The boys could play during recreational periods, defendant Minard being employed by defendant corporation as athletic coach. The expense of keeping each boy in the institution ranged from fifty to fifty-five dollars per month, but it was not necessary for a boy to pay any sum whatever if he or his parents were not able to make payments. Those who were able to pay part of their expenses were required to do so. The mother of plaintiff Charles Isom paid the sum of twenty dollars per month and defendant Smylie paid the sum of ten dollars per month. The superintendent testified: ''It is not a question of pay at all. It is a question of whether the boy needs twenty-four-hour supervision in order to make him a worth-while citizen, or whether he is to be loose on the street to be picked up and sent to the reform school.''

The trustees of defendant corporation adopted the method of self-government for the institution in an effort to have the boys manage their affairs as much as possible. About six years before the incident in question the boys in the institution, whom we will call citizens for lack of a better designation, elected a committee of nine athletic leaders to direct the recreational activities. These leaders did not have authority to punish the other boys but did recommend punishment to the coach for his approval or disapproval. In case of a vacancy among the athletic leaders the remaining leaders filled the vacancy from among the citizens with the approval of the coach. Certain ones of the citizens were selected by the boys' council to act as policemen.

At the time that Charles Isom received his injuries defendant Smylie was one of the athletic leaders. Smylie directed Isom to cease playing basket ball and to play volley

ball in the empty swimming pool. Upon Isom's refusal to go to the swimming pool he was seized by Smylie and pushed toward and into the pool, receiving the injuries as he fell.

■ There is no evidence that defendant Minard was guilty of negligence or that defendant corporation did not exercise due care in selecting him for the position of athletic coach. The judgments in favor of plaintiffs must rest upon their allegation that defendant Smylie was an agent and employee of the corporation. Unquestionably Smylie was not an employee of the other defendants. He was a citizen of the institution paying according to his means for his maintenance and was subject to the rules of the institution. In this regard he was in the same category as was Isom. The fact that under the rules of government of the institution he exercised certain authority over some of the other boys as an athletic leader did not make him such a representative of the corporation as to make the corporation liable for his conduct toward other citizens. In *Hack* v. *Sacramento City Junior Col. Dist.*, 131 Cal. App. 444 [21 Pac. (2d) 477], it is held that under the law making school districts liable for the negligent acts of employees of the district a student at a school could not recover against the school district for injuries occasioned by negligent acts of another student, even though directions were given to the student causing the injuries by one of the teachers. The court stated that "the fact that the students were attempting to carry out certain requests made by their instructor, Mr. Halstead, does not change the rule". The decision in this case was followed in *McCloy* v. *Huntington Park Union High School Dist.*, 139 Cal. App. 237 [33 Pac. (2d) 882], wherein the court held that "in an action for damages for personal injuries to a student arising from the negligent acts of a fellow student, even though such fellow student act upon the order, direction or instruction of an instructor of the school", the injured student could not recover damages against the school district.

One cannot read the record in this case without a feeling of deep sympathy for the plaintiffs. Mrs. Isom placed her minor son in the care of the officers of the institution fully expecting that his physical as well as his moral welfare would be safeguarded and improved. Owing to an unfortunate incident at the farm his arm was crippled for life. The members of this court cannot do otherwise than pass upon

the legal question presented to them, the question of the legality of the judgments under review. The question of the moral responsibility of the corporation must be left to the authorities in control of the institution. It is hard to believe that the humane individuals whose benevolences have made possible the operation of the farm would want to return the boy to his mother in a crippled condition without compensation for the serious injuries received through the fault of one of the other boys.

The judgments as to California Junior Republic, a corporation, and as to A. W. Minard are reversed. The judgments as to Roy Smylie are affirmed.

McComb, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 28, 1939, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 7, 1939.