**PRESIDENT AND DIRECTORS OF GEORGETOWN COLLEGE v. HUGHES.**

No. 7761.

United States Court of Appeals for the District of Columbia.

Decided June 30, 1942.

Mr. Henry I. Quinn, with whom Mr. Richard W. Galiher, both of Washington, D..C., was on the brief, for appellant.

Mr. Emmett Leo Sheehan, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, STEPHENS, MILLER, VINSON, EDGERTON, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The appeal brings here for the first time the question whether a charitable corporation is liable for injury negligently caused by an employee acting in the course of duty. Issues of negligence and contributory negligence also are raised.

The plaintiff had judgment on a verdict, with special interrogatories. Defendant's motions for a directed verdict and to set aside the verdict were denied. The trial court's opinion, filed at the time of judgment, is reported in 1940, 33 F.Supp. 867. We affirm the judgment.

The court is in agreement concerning the issues of negligence and contributory negligence. The only question is whether there was substantial evidence 'to sustain the jury's findings. We think there was. Concerning the other and principal question, all agree that the judgment should be affirmed. But we differ as to the grounds upon which the decision should be placed. The trial court found that plaintiff was a stranger to the charity. Reserving the question of liability to a beneficiary, it held plaintiff entitled to recover. Chief Justice Groner, Justice Stephens and Justice Vinson concur in the result of the affirmance on that basis. They think that by the great weight of authority in the United States charitable corporations are responsible for the negligence of their servants in suits by strangers; and hence that the trial judge correctly ruled that the plaintiff (appellee) in the instant case was a stranger and therefore properly submitted the case to the jury on the questions of negligence and contributory negligence. They likewise think that the case on its facts presents no question as to the liability of charitable corporations for the negligence of their servants in suits by persons other than strangers and that no ruling should be made on that subject and therefore do not express themselves thereon. Justice Miller, Justice Edgerton and myself think the judgment should be affirmed on the broader grounds stated in this opinion.

I. Negligence and Contributory Negligence

On both issues the evidence was sufficient to go to the jury. Hence its findings for the plaintiff must be sustained.

Defendant conducts Georgetown Hospital. Plaintiff, a special nurse on duty, was struck in the back by a door hinged to swing both in and out and located between a ward and the corridor along which she was passing. The door was pushed open suddenly and violently by a student nurse coming out from the ward. The corridor ran east and west. It was a little more than six feet wide. The ward and the door were on the north. Nurses were instructed to keep to the right of the center line and to be cautious about the door. Plaintiff was walking westwardly, to the right of the center, and had already passed the door, when it was pushed open and struck her. She was thrown violently to the floor, and incurred the injuries which have permanently disabled her. There is no issue concerning the character of the injury or the amount of the damages.

The evidence to show negligence is, in part, that the student nurse and several others, in company with the head instructor, Miss Sandmaier, entered the ward just prior to the injury for an hour's work. Miss Sandmaier found some needed article was lacking and sent the student nurse for it. The latter turned and went hurriedly, not running, but walking very fast. Her own and other testimony describes her as rushing, not stopping at the door "because it was a swinging door," not looking through the wire mesh at the bottom to see if anyone were outside, not slowing or slackening her speed as she approached the door, pushing it, meeting an obstacle which fell, pushing it open again after it had swung back toward her, and finding the plaintiff lying on the floor. The testimony also showed that the morning was unusually busy, the article was needed quickly—"the work had to be done in an hour"—and the student nurse habitually rushed and hurried about her work. More need not be related.

At times things happen fast, and have to, in hospitals. When they do accidents may occur which the law must classify as negligence. The student nurse made things move. Ordinarily this would be commendable. Unfortunately that cannot relieve her act here of negligent quality. It was careless, because thoughtless and hasty. We cannot say that the jury could not find it was unreasonably dangerous to others.

The claim of contributory negligence is that plaintiff walked too closely to the door and failed to take due care regarding it, with full knowledge of the danger. The evidence, however, was not so one-sided as to require the case to be kept from the jury. The corridor was not a one-way street. It was only a few inches over six feet wide. Nurses were instructed to walk to the right of the center line. Plaintiff followed the instructions. She was told also to be cautious about the door. The distance from the center to the right side was only about three feet. Nothing shows that plaintiff was not keeping proper lookout for the door as she approached and passed it. She passed in safety. Only after she had gone by was she struck. Whatever might be true if this had taken place before she passed the door, we cannot say as a matter of law that she was bound to anticipate it would be pushed open with such violence as to strike her from behind after she had passed and throw her more than eight feet across the hall. Busy as the period was, it cannot be ruled she was required at her peril to keep her head turned or turning toward the door over her shoulder and backward to guard against so sudden, violent and wide an opening. Nor can it be said certainly that the danger to herself or others would have been greater or less, had she followed a path nearer the center or nearer the wall. There was not much leeway either way, and clearly she was not required to step beyond the center each time in passing the door. Her instructions required the contrary.

Written statements taken from various witnesses shortly after the accident were used to contradict their statements at the trial in some respects. So far as they did so, they merely created conflict in the facts or questions of credibility which also were for the jury. Taking account of all the circumstances, we cannot say plaintiff was contributorily negligent as a matter of law.

II. Liability of Charitable Corporations

We turn to the main question. It is an open one for the District of Columbia. At various times similar complaints have been dismissed on demurrer in the District Court. In only one case was there an appeal. White v. Central Dispensary and Emergency Hospital, 1938, 69 App.D.C. 122, 99 F.2d 355, 362, 119 A.L.R. 1002. The decision dealt with matters of pleading and expressly reserved for the future the determination of "the law of this jurisdiction in respect of the liability of charitable corporations in suits for negligence." The common law of Maryland was not established until 1885. Perry v. House of Refuge, 1885, 63 Md. 20,

52 Am.Rep. 495. It is therefore not controlling.

A few further facts pertinent to this issue should be stated, in view of the trial court's finding that plaintiff was a stranger to the charity, and the importance the finding has assumed on appeal. She was a special nurse. She was called to duty and assigned to the case by the hospital's superintendent of nurses. The patient was a paying one, who also paid plaintiff and paid the hospital for her meals. The hospital furnished her working facilities. The arrangement was the usual one for special nurses.

Paradoxes of principle, fictional assumptions of fact and consequence, and confused results characterize judicial disposition of these claims.[1] From full immunity, through varied but inconsistent qualifications to general responsibility is the gamut of decision. The cases are almost riotous with dissent. Reasons are even more varied than results. These are earmarks of law in flux. They indicate something wrong at the beginning or that something has become wrong since then. They also show that correction, though in process, is incomplete.

On the other hand, scholarly treatment outside the courts is almost uniform. There is general agreement of such opinion in support of liability and against immunity.[2] Legal scholarship finds an important function not only in research and instruction, but as the most effective agency for constructive criticism of judicial thought and action. Great names in law rest on this foundation, some as revered as any made so by the judicial function itself. One may mention among others in the common law, Blackstone, Wigmore, Mechem. A few have combined the two functions, each adding luster to the other, for example, Kent, Story, Cooley, Holmes and Stone, in addition to the great Commentator. Therefore, when opinion among scholars who are not judges is uniform or nearly so and that among judges is in high confusion, the former gives direction to the law of the future,[3] while the latter points presently in all directions. In such circumstances scholarly opinion has more than merely persuasive effect. It is the safest guide for jurisdictions where the question has never been determined.

### A. Underlying Principles

We start with general principles. For negligent or tortious conduct liability is the rule. Immunity is the exception. Human beings ordinarily are responsible for their own legally careless action. They respond also for negligent harms inflicted by their agents and employees. So do business corporations. Likewise trustees and other fiduciaries generally are liable for their own negligence in administration and operation of the business or property committed to their control.[4] Respondeat superior more and more has made them, as it has private corporations, responsible for wrongs done by their inferior functionaries.[5]

Generally also charity is no defense to tort.[6] For wrong done, it is no answer ordinarily to say, "He did not pay and was not

---

[1] For excellent judicial discussion, see Andrews v. Young Men's Christian Ass'n, 1939, 226 Iowa 374, 284 N.W. 186; Tucker v. Mobile Infirmary Ass'n, 1915, 191 Ala. 572, 68 So. 4, L.R.A.1915D, 1167.

[2] 3 Scott, Trusts (1939) § 402; Harper, Torts (1933) § 294; Prosser, Torts (1941) 1079; Appleman, The Tort Liability of Charitable Institutions (1936) 22 A.B.A.J. 48; Feezer, The Tort of Charities (1928) 77 U. of Pa. L.Rev. 191; Notes (1925) 34 Yale L.J. 316; (1934) 14 Boston U.L.Rev. 477; (1935) 22 Va.L.Rev. 58; (1938) 48 Yale L.J. 81.

[3] See Robinson, J., concurring in Miller v. Sisters of St. Francis, 1940, 5 Wash.2d 204, 105 P.2d 32, 36: "The next generation of judges will surely abandon the rule [of immunity] if we do not."

[4] 2 Scott, Trusts (1939) §§ 174, 201, 247, 264; 3 Bogert, Trusts and Trustees (1935) §§ 731–735; Restatement, Trusts (1935) §§ 174, 264; Scott, Liabilities Incurred in the Administration of Trusts (1915) 28 Harv.L.Rev. 725. See the exhaustive collection of cases cited in 2 Scott, supra, § 264 at 1486, n. 2; and in Notes (1904) 63 L.R.A. 227, (1920) 7 A.L.R. 408, (1921) 14 A.L.R. 371.

[5] "Under the principle of respondeat superior, torts committed by the agents or servants of the trustee in the course of the administration of the trust subject the trustee to liability to the same extent as though he were not a trustee (see Restatement of Agency, §§ 212–267). The principle of respondeat superior is applicable although the trustee receives no benefit from the trust." Restatement, Trusts (1935) § 264, comment b. See 2 Scott, Trusts (1939) § 225, and authorities cited in note 4.

[6] Slater v. Illinois Central R. R., C.C. M.D.Tenn.1911, 209 F. 480; Zelenko v. Gimbel Bros., 1935, 158 Misc. 904, 287 N.Y.S. 134; Gates v. Chesapeake & O.

bound to pay for the service. I gave it to him." One who undertakes to aid another must do so with due care. Whether the Good Samaritan rides an ass, a Cadillac, or picks up hitchhikers in a Model T, he must ride with forethought and caution.[7] He is not relieved because it is his driver rather than himself who lapses into carelessness.[8] Nor does it matter that the doer of good is a corporation, if the act of gratuitous service is fairly incidental to the business.[9] Railroad companies, through their employees, may and often do undertake to do more for the passenger than the strict bargain or duty of carriage requires. But if they depart from normal conduct in doing it, they pay for the deviation. Charity and gratuity generally go to motive, not to duty. The automobile guest statutes show that legislation has been required to modify the common-law rule, though even in this application they do not entirely abolish it.[10]

Charity suffereth long and is kind, but in the common law it cannot be careless. When it is, it ceases to be kindness and becomes actionable wrongdoing.

Apart from charity, immunity does not turn on the technical form in which the legal interest is organized. Corporations, trustees, executors, administrators, receivers, as well as individual human beings and partnerships or their members, are responsible for negligence. Respondeat superior makes each liable for the tortious conduct of representatives acting in the course of the enterprise and not too far out of the proper sphere of duty. It is true that shareholders have limited liability and trust beneficiaries generally may not be held personally responsible. Normally, too, the trust fund cannot be reached directly, though breaches appear progressively in its classical immunity.[11] So it is with decedents'

Ry., 1919, 185 Ky. 24, 213 S.W. 564, 5 A.L.R. 507; Harper, Torts (1933) § 81; Prosser, Torts (1941) 194-7; Restatement, Torts (1934) §§ 323-5; cf. Siegel v. Spear & Co., 1923, 234 N.Y. 479, 138 N.E. 414, 26 A.L.R. 1205; Kirshenbaum v. General Outdoor Advertising Co., 1932, 258 N.Y. 489, 180 N.E. 245, 84 A.L.R. 645. See, also, notes 8 and 10 infra. In Bonner v. Moran, 1941, 75 U.S.App.D.C. 156, 126 F.2d 121, we held that a physician could be held liable in damages to a charity patient in the charity clinic of an incorporated charitable hospital. See, also, Christie v. Callahan, 1941, 75 U.S.App.D.C. 133, 124 F.2d 825.

[7] See note 10 infra.

[8] Thomas v. Carter, 1927, 218 Ala. 55, 117 So. 634; Davis v. Margolis, 1928, 107 Conn. 417, 140 A. 823; Paiewonsky v. Joffe, 1925, 101 N.J.L. 521, 129 A. 142, 40 A.L.R. 1335; Trotter v. Bullock, 1928, 148 Wash. 516, 269 P. 825; for further authorities see A.L.R.Notes cited in note 10 infra. For application of this principle under Owners' Financial Responsibility Acts, see Cuba v. Turmelle, 1938, 168 Misc. 256, 5 N.Y.S.2d 811; Note (1941) 135 A.L.R. 483, and the annotations cited therein.

[9] See note 6 supra.

[10] E. g., Va.Code Ann. (Supp.1940) § 2154(232); see the collection of statutes in Hodges, The Automobile Guest Statutes (1934) 12 Tex.L.Rev. 303; Weber, Guest Statutes (1937) 11 U. of Cin.L. Rev. 24; Notes (1936) 5 Fordham L. Rev. 183, (1936) 8 Rocky Mt.L.Rev. 220, (1932) 18 Iowa L.Rev. 78, 287,

(1936) 10 U. of Cin.L.Rev. 289, (1933) 18 Corn.L.Q. 621.

For the common-law rule in this application without statutory modification, see Hewlett v. Schadel, 4 Cir., 1934, 68 F.2d 502, 91 A.L.R. 743; Marple v. Haddad, 1927, 103 W.Va. 508, 138 S.E. 113, 61 A.L.R. 1248; Olson v. Hermansen, 1928, 196 Wis. 614, 220 N.W. 203, 61 A.L.R. 1243; Note (1930) 65 A.L.R. 952, and the annotations cited therein.

[11] With the adaptation of the trust to business as well as family purposes and those of managing property generally, recourse to the trust res has been much more frequent than formerly. See Smith v. Coleman, 1931, 100 Fla. 1707, 132 So. 198; 29 Mich.L.Rev. 1102; In re Raybould, [1900] 1 Ch. 199; Miller v. Smythe, 1893, 92 Ga. 154, 18 S.E. 46; Carey v. Squire, 1939, 63 Ohio App. 476, 27 N.E.2d 175; Ewing v. Wm. L. Foley, Inc., 1926, 115 Tex. 222, 280 S. W. 499, 44 A.L.R. 627; 2 Scott, Trusts (1939) §§ 247, 264, 271 A. 2; 3 Bogert, Trusts and Trustees (1935) § 732; Fulda and Pond, Tort Liability of Trust Estates (1941) 41 Col.L.Rev. 1332; Stone, A Theory of Liability of Trust Estates for the Contracts and Torts of the Trustee (1922) 22 Col.L.Rev. 527; Kerr, Liability of the Trust Estate for Torts of the Trustee's Servants (1927) 5 Tex.L.Rev. 368. For progress through legislation, see Uniform Trusts Act §§ 13, 14; Handbook of the National Conference of Commissioners on Uniform State Laws (1937) 266, 270; La.Gen. Stat.Ann. (Dart, 1939) §§ 9850.53, 9850.84 Act La. No. 81 of 1938, §§ 53,

estates and others.[12]   But the corporate liability is substituted for that of the shareholders, and the trustees' personal responsibility gives the victim of their careless action a source of indemnity.   The form of legal organization may place liability here or there.   But in general it does not nullify liability altogether and cast the burden of negligent injury exclusively upon its victim. Somewhere in the legal structure there is a responsible element apart from the negligent actor.

When an individual human being undertakes not simply an isolated act, but a habit or business of charity, without incorporating or casting it in the form of a trust, he does not acquire immunity.   Possibly half the medical service rendered today is charity practice.   So is a large share of legal service.[13]   Some physicians, and perhaps some lawyers, spend half or more of long and useful careers ministering to the sick and the troubled without pay.   Many more do so habitually, but less extensively.   Yet they do not have leave to be careless, notwithstanding their kindness is continuous or habitual rather than casual or occasional. Nor would they if it were conducted through or in association with others.   Only when an individual institutionalizes his charitable enterprise formally, as by incorporation or possibly by creating a trust, does he succeed in casting the whole burden of its negligent operation on those it injures.

It is a strange distinction, between a charitable institution and a charitable individual, relieving the one, holding the other, for like service and like lapse in like circumstances. The hospital may maim or kill the charity patient by negligence, yet the member of its medical staff, operating or attending without pay or thought of it, dare not lapse in a tired or hurried moment.   Cf. Bonner v. Moran, 1941, 75 U.S. App.D.C. 156, 126 F. 2d 121; Christie v. Callahan, 1941, 75 U.S. App.D.C. 133, 124 F.2d 825.   The institution goes free.   The physician pays.   Yet they render a common service, which the hospital could not furnish without him.   The physician cannot incorporate.   He cannot shield himself behind a trust.   He cannot escape respondeat superior.   His partner answers if he does.   Cf. Christie v. Callahan, supra.   So it is with the lawyer.

The basis of the distinction cannot be charity.   It cannot be habit or continuity in charity.   If it were either, individuals would be free upon proof of the fact, or institutions would be liable upon proof of the contrary in the particular instance.   The distinction reverses the general trend of responsibility in a risk-sharing and distributing age.   Institutions have a survival value no individual possesses.   They withstand vicissitudes individuals cannot meet.   It is probable that charitable ones resist demise more stoutly than business ones.   Certainly they incur no greater risks.   If charity should exempt either institutions or individuals, it should be the latter.   But there should be no distinction.   Unless motive is to replace duty, both should be liable and liable alike.[14]   Institutions should shoulder the responsibilities all other citizens bear.   They

84; N.C.Code Ann. (Michie, 1939) §§ 4035(p), 4035(q).

The idea that the trustee should go down in his own pocket, inherited from the day when he was the only "person" who could be seen in the trust picture through legal spectacles, has given way, though it has not disappeared entirely, to recognition in some instances that the fund, not his personal estate, should sustain the loss, and that the process of making him respond, then seeking "indemnity" from the fund, is but a circuitous way of recognizing and giving effect to this fact.   E. g., see Benett v. Wyndham, Ch.1862, 4 DeG. F. & J. 259, 45 Eng.Reprint 1183; In re Hunter, D.C., E.D.Pa.1907, 151 F. 904; Smith v. Rizzuto, 1937, 133 Neb. 655, 276 N.W. 406; (1938) 51 Harv.L.Rev. 1455, (1938) 23 Iowa L.Rev. 669, (1938) 22 Minn.L.Rev. 907; In re Lathers' Estate, 1930, 137 Misc. 226, 243 N.Y.S. 366, (1931) 29 Mich.L.Rev. 469, (1931) 79 U. of Pa.L.Rev. 623.

[12] Dobbs v. Noble, 1937, 55 Ga.App. 201, 189 S.E. 694; Bright Nat. Bank v. Hanson, 1916, 68 Ind.App. 61, 113 N. E. 434; Birdsong v. Jones, 1928, 222 Mo.App. 768, 8 S.W.2d 98, later appeal, 1930, 225 Mo.App. 242, 30 S.W.2d 1094; Notes (1926) 44 A.L.R. 637, (1940) 127 A.L.R. 687.

[13] Garrison, Legal Service for Low Income Groups in Sweden (1940) 26 A.B. A.J. 215, 293; Miller, Legal Service and Children's Aid Society (1940) 26 A.B. A.J. 223; Harris, Legal Services in the Low Income Group (1941) 15 U. of Cin. L.Rev. 176; Committee on Costs of Medical Care, Final Report, Medical Care for the American People (1932); Levy and Martin, Cooperative Medicine and the Law (1938) 1 Nat. Lawyers Guild Q. 194.

[14] " * * * under the common law * * * an individual is bound to make compensation for his negligent acts causing damage to others, whether his motives be charitable or otherwise.   He is

should minister as others do, within the obligation not to injure through carelessness.

Nor should the legal form in which the charitable institution is cast create immunity. It is not altogether clear that it does, except possibly when the corporate form is used. Unless the normal law of trusts is modified, the trustee must go down in his pocket as other trustees do, though he cannot dip into the fund. But when the charity is incorporated, somehow charity plus incorporation creates a certainty of immunity neither can attain apart from the other. Because the directors do not hold the legal title to the corporate property and therefore are not "principals" as trustees are, though they have all the latters' control and more, there is no personal liability of the ultimately responsible management except when its members participate personally in the negligent action. When charity is incorporated, therefore, it takes on a cloak of immunity not granted it in other guises, and not granted in that guise to other activities.[15]

## B.   Historical Background

Such an anomaly generally arises only through accident. It did so in this instance, though the accidental character of the origin has been lost in the fog of later decision. The doctrine of immunity of charitable corporations found its way into the law, like the so-called "trust fund" doctrine in the law of private business corporations,[16] through misconception or misapplication of previously established principles.

The foundation of immunity in this country is the dictum of Lord Cottenham in The Feoffees of Heriot's Hospital v. Ross, 1846, 12 Clark & Fin. 507, 513, 8 Eng. Reprint 1508: "To give damages out of a trust fund would not be to apply it to those objects whom the author of the fund had in view, but would be to divert it to a completely different purpose." The action was for damages for wrongful exclusion from the benefits of the charity, not for personal injury inflicted in its operation. Previously, in Duncan v. Findlater, 1839, 6 Clark & Fin.

---

also obliged to compensate the recipient of his charity for an injury received in its negligent performance. If he undertakes to act through others, his employees, the situation is not changed: 'Qui facit per alium facit per se.' Nor is the situation altered by the organization of a corporation for the carrying out of his purpose." Bougon v. Volunteers of America, La.App.1934, 151 So. 797, 798.

"What possible rational basis could the court have for distinguishing * * * between a charitable institution and a charitably disposed individual? * * * If the policy of the law is to encourage donations to charity, the same policy would seem to favor and foster other individual acts of kindness and helpfulness; yet the courts do not hesitate to hold an individual 'good Samaritan' liable for his failure to exercise due care." (1935) 22 Va.L.Rev. 58, 65, and note 38.

15 The litigation has arisen almost entirely in relation to incorporated charities. If the litigated cases may be taken as a measure, incorporation practically has replaced the technical trust as the legal mode of constituting permanent charity. The two together no doubt account for most of it, though unincorporated associations often engage in more casual or occasional forms of benevolence without use of either.

Consequently, apart from cases involving corporations, authority is surprisingly scarce. Attempts to enforce personal liability of charitable trustees have been almost nonexistent, notwithstanding the wealth of litigation to reach charitable funds corporately held and notwithstanding it was on the view the trustees would be liable individually, as are other trustees (see note 5 supra), that the original dicta were uttered from which grew the doctrine of the fund's immunity. See text infra, circa notes 16–18. In spite of these things, one case has held that charitable trustees are not liable individually, under respondeat superior, for negligent acts. Farrigan v. Pevear, 1906, 193 Mass. 147, 78 N.E. 855, 7 L.R.A.,N. S., 481, 118 Am.St.Rep. 484. In three other cases unincorporated charitable associations, not constituted as trusts, have been held immune. Herndon v. Massey, 1940, 217 N.C. 610, 8 S.E.2d 914; (1941) 19 N.C.L.Rev. 245; Burgie v. Muench, 1940, 65 Ohio App. 176, 29 N.E.2d 439; Fire Ins. Patrol v. Boyd, 1888, 120 Pa. 624, 15 A. 553, 1 L.R.A. 417, 6 Am.St. Rep. 745. In this paucity of decision, the law cannot be taken as crystallized and the risk of liability, whether as trustee or as member of the unincorporated group on modified principles of partnership law, would seem sufficiently serious to further encourage incorporation.

16 See Hospes v. Northwestern Mfg. & Car Co., 1892, 48 Minn. 174, 50 N.W. 1117, 1119, 15 L.R.A. 470, 31 Am.St. Rep. 637, discussing Wood v. Dummer, C.C.1824, Fed.Cas. No. 17,944, 3 Mason 308.

894, 7 Eng. Reprint 934, the same judge had uttered a similar dictum, and this was followed in Holliday v. St. Leonard, 1861, 11 C.B., N.S., 192.[17] However, the dictum of Duncan v. Findlater was overruled by Mersey Docks Trustees v. Gibbs, [1866] L.R. 1 H.L. 93, and the ruling of Holliday v. St. Leonard was reversed by Foreman v. Mayor of Canterbury, [1871] L.R. 6 Q.B. 214.

In this state of the English decisions, Massachusetts adopted the repudiated rule of Holliday v. St. Leonard in McDonald v. Massachusetts General Hospital, 1876, 120 Mass. 432, 21 Am.Rep. 529, and Maryland followed Heriot's case in Perry v. House of Refuge, 1885, 63 Md. 20, 52 Am.Rep. 495. Apparently both courts acted in ignorance of the English reversal. In any event, they resurrected in America a rule already dead in England, and thereby gave Lord Cottenham's dictum a new lease on life in the New World.

These facts have been the subject of comment.[18] But it is not always noted that in Heriot's case Lord Cottenham and his brethren did not purport to lay down a rule of absolute immunity. They regarded exemption of the hospital's funds as only an application of the well-settled law of trusts. The opinions are couched in trust, not corporate, terminology. Lord Cottenham thought to give damages would violate the trust purpose. Lord Campbell said it would pervert the intention of the donor. But he emphasized that it would indemnify "the trustees * * * against the consequences of their own misconduct * * * *Damages are to be paid from the pocket of the wrongdoer, not from a trust fund."* (Italics supplied.) As Lord Brougham put it, "Because the trustees have violated the statute, therefore —what? *not that they shall themselves pay the damages,* but that the trust fund which they administer shall be made answerable *for their misconduct".*[19] (Italics supplied.) Seemingly all regarded the hospital's governors as being technically and substantially trustees of an express trust. On that theory and the fact that the governors themselves were charged with violating the statute, there was a source of reparation in their pockets. The victim would not be left with injury and without remedy. Unless trustees of a charity are treated differently from all others, that would be true in any case where the charity is organized technically as a trust.

But when it takes the form of a corporation, having no other business or assets, the trustees' liability disappears. There is no trustee to be liable. The different position of directors shuts off recourse to their assets and strips the victim of all claim except against the negligent actor. If the corporation itself is regarded as trustee, the result is the same, since ordinarily such a

---

[17] Duncan v. Findlater decided only that highway trustees, under a public road act, were not liable for the negligence of persons who were not shown to be their servants. Lord Cottenham went further and said that persons acting under a statute as trustees of a public body could never, in their official or corporate capacity, be liable for damages, the remedy for any wrong being against the individual wrongdoers. The principle of Holliday v. St. Leonard was that persons entrusted with the performance of a public duty, discharging it gratuitously, and themselves taking no personal share in performance, are exempted from liability for the negligent acts of the persons employed by them. The influence of municipal law is evident both in the dictum and in the decision.

[18] Tucker v. Mobile Infirmary Ass'n, 1915, 191 Ala. 572, 68 So. 4, 6, L.R.A. 1915D, 1167; Andrews v. Young Men's Christian Ass'n, 1939, 226 Iowa 374, 284 N.W. 186, 189, 24 Iowa L.Rev. 769, 87 U. of Pa.L.Rev. 1015; Glavin v. Rhode Island Hospital, 1879, 12 R.I. 411, 34 Am.Rep. 675; Lanere v. Smith's Falls Public Hospital, [1916] 35 O.L.R. 98, 26 D.L.R. 346; Callender, Torts of Hospitals (1881) 15 Am.L.Rev. 640; 10 Fletcher, Cyc. Corp. (Perm. ed. 1931) § 4928.

[19] In 1862, Benett v. Wyndham, 4 DeG. F. & J. 259, allowed the trustee indemnity from the trust estate for his liability based on respondeat superior. This case has since been the law of England. See note 11 supra. Likewise, there has been no immunity to charities, whether trusts or corporations, since Heriot's case. The law of England has been as stated by Farwell, L. J., in Hillyer v. St. Bartholomew's Hospital, [1909] 2 K.B. 820, in a case involving a charity patient. "It is now well settled that a public body is liable for the negligence of its servants in the same way as private individuals would be liable in similar circumstances, notwithstanding that it is acting in the performance of public duties, like a local board of health, or of eleemosynary and charitable functions like a public hospital." For a discussion of the English cases, see Goodhart, Hospitals and Trained Nurses (1938) 54 L.Q.Rev. 553. See note 37 infra.

corporation has no individual estate beyond the fund created for the charitable purpose. Without following the matter further, a rule of absolute immunity which grew out of dicta pointing the plaintiff to another source of recovery and involved an application or misapplication, as may have been the case, of the law of trusts to a corporate situation, hardly gains permanence from its origin. When to these facts are added its early reversal, and its acceptance in this country in disregard or ignorance of that fact, the historical foundation crumbles. The fault in the foundation accounts in part for the weakness later disclosed in the structure erected on it.

### C. The Confused State of Decision

It is doubtful that the so-called "rule" of full immunity ever represented the prevailing state of decision in this country. Conflict has existed from the beginning. Rhode Island repudiated the immunity just when Massachusetts and Maryland were adopting it. Glavin v. Rhode Island Hospital, 1879, 12 R.I. 411, 34 Am.Rep. 675. Nevertheless judicial discussion has set in the pattern that immunity is the rule, much of it without explicit recognition that the "rule" itself is an exception to general principles of liability.

Notwithstanding the pattern, the "rule" has not held in the tests of time and decision. Judged by results, it has been devoured in "exceptions." Debate has gone on constantly, not so much as to whether, but concerning how far it should be "modified," with ever widening modification.[20]

It is perhaps impossible, if it were worth while, to make an exact summary of the present state of American decision or to determine with accuracy what is the "prevailing rule." An effort to do this made later discloses a tangled skein from which it is difficult to draw a thread of dominant strength, even on a numerical basis.[21] This much, however, is sure. The immunity, so far as it ever existed, has disappeared largely as to all persons and classes of claimants save one. This includes only so-called beneficiaries of the trust or charity.[22] That class now is disintegrating, and the rights of the beneficiary, who needs the protection most, also are securing recognition. If we look at results, therefore, rather than words or forms of statement in opinions, for the test of what is "the law" or "the prevailing rule," immunity is not "the rule" and liability "the exception." The rule has become merely a relict in the multitude of departures.[23]

Notwithstanding this, the habit of statement remains long after results have contradicted it. Opinions continue to speak in the set pattern, often when holding only to the last remnant of irresponsibility and occasionally, as is noted later, when repudiating all grounds for retaining that. The judicial debate continues around the "modifications" which should be made. Nearly everywhere the question is, not whether the immunity is total, but whether (1) the plaintiff is one entitled to hold the corporation to payment; or (2) whether it should be charged for the act of a particular agent, servant, employee or other representative. Liability also turns here and there, apparently, on where the act occurs or its nature, such as driving an ambulance or a truck on the streets[24] in contrast to running an elevator or pushing a cart in the corridors of the hospital.[25] In some jurisdictions, strangers (that is, persons not beneficiaries of the charity) may recover;[26] in others, paying beneficiaries also, but not nonpaying, may do so.[27] In both there is much debate as to who is stranger and who is beneficiary.[28] Thus, in this case the trial court held, first, that charitable corporations are liable to strangers, whether or not to beneficiaries. Then it held the plaintiff, not being a patient, was a stranger, and therefore could recover.

---

[20] In some instances, departures, made timidly at first, have grown until the rule has disappeared, e. g., the long struggle of New York with various modifications, ending recently in imposition of full liability. See note 36 Infra.

[21] See notes 33–43 infra, and accompanying text of this opinion.

[22] Ibid.

[23] Ibid.

[24] Daniels v. Rahway Hospital, 1932, 160 A. 644, 10 N.J.Misc. 585; 81 U. of Pa.L.Rev. 93; Kellogg v. Church Charity Foundation, 1911, 203 N.Y. 191, 96

N.E. 406, 38 L.R.A.,N.S., 481, Ann.Cas. 1913A 883; Basabo v. Salvation Army, 1912, 35 R.I. 22, 85 A. 120, 42 L.R.A.,N. S., 1144; cf. Sheehan v. North Country Community Hospital, 1937, 273 N.Y. 163, 7 N.E.2d 28, 109 A.L.R. 1197.

[25] Boeckel v. Orange Memorial Hospital, 1932, 108 N.J.L. 453, 158 A. 832.

[26] See note 42 infra.

[27] See note 38 infra.

[28] Andrews v. Young Men's Christian Ass'n, 1939, 226 Iowa 374, 284 N.W. 186, 193. See note 43 infra.

Similarly, some states impose liability for the negligence of managing officials, but not for that of less authoritative employees or agents.[29] Others apply, in this respect, substantially the rule applied generally to business corporations, namely, without attempting to state it precisely, that the corporation will be liable for all negligence inflicted by employees or other representatives whose function it is or reasonably appears to be to perform the act, in the course of doing which the negligence and the injury occur.[30]

Finally, these modifications may exist in double aspect. That is, the stranger-beneficiary distinction may be combined with the manager-ordinary servant one.[31] And both may vary with the public highway-hospital premises factor.[32]

From this welter of conflict, the following general, but none too sure conclusions may be made. Five states appear to have no decisions on the subject.[33] Eleven apparently adhere to full immunity, with exceptional liabilities which have been noted.[34]

[29] Old Folks' & Orphan Children's Home v. Roberts, 1930, 91 Ind.App. 533, 171 N.E. 10; Roberts v. Ohio Valley General Hospital, 1925, 98 W.Va. 476, 127 S.E. 318, 42 A.L.R. 968; cf. Carver Chiropractic College v. Armstrong, 1924, 103 Okl. 123, 229 P. 641, 642.

[30] See, e. g., Mulliner v. Evangelischer Diakonniessenverein, etc., 1920, 144 Minn. 392, 175 N.W. 699; Glavin v. Rhode Island Hospital, 1879, 12 R.I. 411, 34 Am.Rep. 675. See note 35 infra.

[31] Andrews v. Young Men's Christian Ass'n, 1939, 226 Iowa 374, 284 N.W. 186 (liability to "stranger"); Mikota v. Sisters of Mercy, 1918, 183 Iowa 1378, 168 N.W. 219 (nonliability to a "beneficiary," a paying patient).

The great majority of the states which hold that a charitable institution is not liable for the negligence of employees hold it liable for negligence in selection or retention of employees. E. g., Southern Methodist Hospital and Sanatorium v. Wilson, 1935, 45 Ariz. 507, 46 P.2d 118; Young v. Boy Scouts of America, 1935, 9 Cal.App.2d 760, 51 P.2d 191; Old Folks' and Orphan Children's Home v. Roberts, 1925, 83 Ind.App. 546, 149 N.E. 188; Ratliffe v. Wesley Hospital & Nurses Training School, 1932, 135 Kan. 306, 10 P.2d 859; Borgeas v. Oregon Short Line R. R., 1925, 73 Mont. 407, 236 P. 1069; Hoke v. Glenn, 1914, 167 N.C. 594, 83 S.E. 807, Ann.Cas.1916E, 250. Some hold that the burden of proving due care in the selection is an affirmative defense. E. g., Lewis v. Young Men's Christian Ass'n, 1928, 206 Cal. 115, 273 P. 580; Roberts v. Ohio Valley Hospital, 1925, 98 W.Va. 476, 127 S.E. 318, 42 A.L.R. 968. Contra: Waddell v. Young Women's Christian Ass'n, 1938, 133 Ohio St. 601, 15 N.E.2d 140; 24 Iowa L.Rev. 164. For a good example of liability for "administrative" negligence, see Miller v. Sisters of St. Francis, 1940, 5 Wash.2d 204, 105 P.2d 32; 4 U. of Detroit L.J. 48, 20 B.U.L.Rev. 709 (1941), 16 Wash.L.Rev. 245.

[32] See notes 42, 43 infra.

[33] Delaware, New Mexico, North Dakota, South Dakota, and Vermont.

[34] "Full immunity" is used in reference to the plaintiff's ability to maintain the suit rather than whether the charity may be liable under special circumstances, as for administrative negligence, or when there is insurance, or satisfaction may be had from business property. It means therefore that ordinarily neither "strangers" nor "beneficiaries" may recover, though one or both may do so in exceptional situations or when the rule is held inapplicable.

*Arkansas:* Arkansas Valley Co-op. Rural Electric Co. v. Elkins, 1940, 200 Ark. 883, 141 S.W.2d 538 (stranger); Fordyce & McKee v. Woman's Christian Nat. Library Ass'n, 1906, 79 Ark. 550, 96 S.W. 155, 7 L.R.A.,N.S., 485 (stranger). *Illinois*: Maretick v. South Chicago Community Hospital, 1938, 297 Ill. App. 488, 17 N.E.2d 1012 (patient); Parks v. Northwestern University, 1905, 218 Ill. 381, 75 N.E. 991, 2 L.R.A.,N.S., 556, 4 Ann.Cas. 103 (student); Simon v. Pelouze, 1931, 263 Ill.App. 177 (invitee); cf. Johnston v. Chicago, 1913, 258 Ill. 494, 101 N.E. 960, 45 L.R.A.,N.S., 1167, Ann.Cas.1914B, 339 (public library liable to stranger). *Kansas*: Ratliffe v. Wesley Hospital & Nurses' Training School, 1932, 135 Kan. 306, 10 P.2d 859 (patient); Webb v. Vought, 1929, 127 Kan. 799, 275 P. 170 (stranger). *Kentucky*: Emery v. Jewish Hospital Ass'n, 1921, 193 Ky. 400, 236 S.W. 577 (employee); Cook v. John N. Norton Memorial Infirmary, 1918, 180 Ky. 331, 202 S.W. 874, L.R.A.1918E, 647 (paying patient). *Maryland*: Loeffler v. Trustees of Sheppard & Enoch Pratt Hospital, 1917, 130 Md. 265, 100 A. 301, L.R.A.1917D, 867 (stranger); Perry v. House of Refuge, 1885, 63 Md. 20, 52 Am.Rep. 495 (inmate); cf. State v. Baltimore Eye, Ear and Throat Hospital, 1940, 177 Md. 517, 10 A.2d 612, (1941) 5 Md.L.Rev. 336. *Massachusetts*: Zoulalian v. New England Sanatorium & Benevolent Ass'n, 1918, 230 Mass. 102, 119 N.E. 686, L.R.A.1918F, 185 (em-

Three certainly, and apparently a fourth, have imposed unqualified liability.[35] New York has done so after tortuous efforts to find a satisfactory intermediate stopping place.[36] England, Canada, and New Zealand have adhered to this position since Mersey Docks Trustees v. Gibbs, supra.[37] In seven states strangers and paying bene-

ployee); Roosen v. Peter Bent Brigham Hospital, 1920, 235 Mass. 66, 126 N.E. 392, 14 A.L.R. 563 (patient); McDonald v. Massachusetts General Hospital, 1876, 120 Mass. 432, 21 Am.Rep. 529 (patient). *Missouri*: Eads v. Young Women's Christian Ass'n, 1930, 325 Mo. 577, 29 S.W.2d 701 (employee); Roberts v. Kirksville College, Mo.App.1929, 16 S. W.2d 625 (paying patient). *Oregon*: Hill v. President and Trustees of Tualatin Academy and Pacific University, 1912, 61 Or. 190, 121 P. 901 (invitee); O'Neill v. Odd Fellows Home of Oregon, 1918, 89 Or. 382, 174 P. 148 (employee). But cf. Hamilton v. Corvallis General Hospital Ass'n, 1934, 146 Or. 168, 30 P.2d 9, where a patient was allowed to recover when the question whether the hospital was a charitable institution was submitted to the jury. *Pennsylvania*: Gable v. Sisters of St. Francis, 1910, 227 Pa. 254, 75 A. 1087, 136 Am.St.Rep. 879 (paying patient); Fire Insurance Patrol v. Boyd, 1888, 120 Pa. 624, 15 A. 553, 1 L.R.A. 417, 6 Am.St.Rep. 745 (stranger); Paterlini v. Memorial Hospital Ass'n, 3 Cir., 1918, 247 F. 639, certiorari denied, 1918, 246 U.S. 665, 38 S.Ct. 334, 62 L.Ed. 929. *South Carolina*: Vermillion v. Woman's College of Due West, 1916, 104 S.C. 197, 88 S.E. 649; Id., 1918, 111 S.C. 156, 97 S.E. 619 (invitee); Lindler v. Columbia Hospital, 1914, 98 S.C. 25, 81 S.E. 512 (patient). *Wisconsin*: Waldman v. Young Men's Christian Ass'n, 1938, 227 Wis. 43, 277 N.W. 632; Schumacher v. Evangelical Deaconess Society, 1935, 218 Wis. 169, 260 N.W. 476 (patient); Bachman v. Young Women's Christian Ass'n, 1922, 179 Wis. 178, 191 N.W. 751, 30 A.L.R. 448 (stranger).

Some exceptional liabilities found in these jurisdictions are: (1) for negligent selection of employees, e. g., Ratliffe v. Wesley Hospital and Nurses' Training School, supra. Contra: Ettlinger v. Trustees of Randolph-Macon College, 4 Cir, 1929, 31 F.2d 869; Roosen v. Peter Bent Brigham Hospital, supra; Schumacher v. Evangelical Deaconess Society, supra; (2) for negligence when property is being used to raise money for the charity, e. g., McKay v. Morgan Memorial Co-op. Industries & Stores, 1930, 272 Mass. 121, 172 N.E. 68; Reavey v. Guild of St. Agnes, 1933, 284 Mass. 300, 187 N.E. 557; Winnemore v. Philadelphia, 1902, 18 Pa.Super. 625; (3) for failure to observe a statute requiring

public buildings to be kept in safe condition, e. g., Wilson v. Evangelical Lutheran Church, 1930, 202 Wis. 111, 230 N. W. 708; (4) as employer under Workman's Compensation Act, Mo.R.S.A. § 3689 et seq., Hope v. Barnes Hospital, 1932, 227 Mo.App. 1055, 55 S.W.2d 319. Contra: Zoulalian v. New England Sanatorium, supra; (5) for creating a nuisance, Peden v. Furman University, 1930, 155 S.C. 1, 151 S.E. 907.

[35] *Minnesota*: Mulliner v. Evangelischer Diakonniessenverein, etc., 1920, 144 Minn. 392, 175 N.W. 699 (paying patient); Geiger v. Simpson Methodist-Episcopal Church, 1928, 174 Minn. 389, 219 N.W. 463, 62 A.L.R. 716; McInerny v. St. Luke's Hospital Ass'n, 1913, 122 Minn. 10, 141 N.W. 837, 46 L.R.A.,N.S., 548 (employee); Borwege v. City of Owatonna, 1933, 190 Minn. 394, 251 N. W. 915 (paying patient). *New Hampshire*: Welch v. Frisbie Memorial Hospital, 1939, 90 N.H. 337, 9 A.2d 761 (patient); Hewett v. Hospital Aid Ass'n, 1906, 73 N.H. 556, 64 A. 190, 7 L.R.A., N.S., 496 (nurse). *New York*: Sheehan v. North Country Community Hospital, 1937, 273 N.Y. 163, 7 N.E.2d 28, 109 A. L.R. 1197; 13 Ind.L.J. 96, 14 N.Y.U.L. Q.Rev. 534 (paying patient); Dillon v. Rockaway Beach Hospital & Dispensary, 1940, 284 N.Y. 176, 30 N.E.2d 373, 374; 15 St.John's L.Rev. 321 (patient). In the Dillon case the Court of Appeals stated the present New York rule as follows: " * * * it is now settled that even a charitable hospital is liable for the acts of its servants."

Oklahoma's treatment of the problem appears to place it also in the full liability category, although the only cases found involve strangers and paying patients. See note 38 infra.

[36] See McCaskill, Respondeat Superior as Applied in New York to Quasi-Public and Eleemosynary Corporations (1920) 5 Corn.L.Q. 409, 6 Corn.L.Q. 56; Note (1939) 9 Brooklyn L.Rev. 78. For the so-called New York "independent contractor" doctrine, see Hamburger v. Cornell University, 1925, 240 N.Y. 328, 148 N.E. 539, 42 A.L.R. 955; Post v. Crown Heights Hospital, 173 Misc. 250, 17 N.Y. S.2d 409 (1940); Volk v. City of New York, 1940, 284 N.Y. 279, 30 N.E.2d 596.

[37] Hillyer v. Governors of St. Bartholomew's Hospital, [1909] 2 K.B. 820; Powell v. Streatham Manor Nursing Home, [1935] A.C. 243; Lindsey County Council v. Marshall, [1937] A.C. 97,

ficiaries may recover,[38] but the question has been reserved as to nonpaying ones, with strong indications in some instances that they too will be accorded protection.[39] Colorado and Tennessee impose liability if the charity is protected by insurance,[40] and the latter, with Georgia and some other states, applies it to the extent of property owned by the corporation and used not directly in carrying on the charitable enterprise, but for business purposes to produce income for its support.[41] The trend in the ten states

[1935] 1 K.B. 516; Wardell v. Kent County Council, 1938, 54 T.L.R. 1026; Nyberg v. Provost Municipal Hospital, [1927] S.C.R. 226; Lanere v. Smith Falls Public Hospital, [1915] 35 O.L.R. 98, 26 D.L.R. 346, reversing, [1915] 34 O.L.R. 216, 24 D.L.R. 866; Logan v. Waitaki Hospital Board, [1935] N.Z.L.R. 385. See Goodhart, Hospitals and Trained Nurses (1938) 54 L.Q.Rev. 553; Wright, Liability for Negligence of Nurses and Doctors (1936) 14 Can.B. Rev. 699.

38 *Alabama*: Tucker v. Mobile Infirmary Ass'n, 1915, 191 Ala. 572, 68 So. 4, L.R.A.1915D, 1167 (paying patient); Alabama Baptist Hospital Board v. Carter, 226 Ala. 109, 145 So. 443; Carter v. Alabama Baptist Hospital Board, 1933, 227 Ala. 560, 151 So. 62 (invitee). *California*: Silva v. Providence Hospital, 1939, 14 Cal.2d 762, 97 P.2d 798, (1940) 26 Va.L.Rev. 951 (paying patient); England v. Hospital of Good Samaritan, 1939, 14 Cal.2d 791, 97 P.2d 813 (paying patient); Phoenix Assurance Co. v. Salvation Army, 1927, 83 Cal.App. 455, 256 P. 1106 (stranger). Numerous California cases hold that a "beneficiary" cannot recover except for negligence in selection of employees, e. g., Young v. Boy Scouts of America, 1935, 9 Cal.App. 2d 760, 51 P.2d 191; Isom v. California Junior Republic, 1939, 33 Cal.App.2d 299, 91 P.2d 121; Bardinelli v. Church of all Nations, 1937, 23 Cal.App.2d 713, 73 P.2d 1264. *Florida*: Nicholson v. Good Samaritan Hospital, 1940, 145 Fla. 360, 199 So. 344, 133 A.L.R. 809 (paying patient). *Georgia*: Robertson v. Executive Committee of Baptist Convention, 1937, 55 Ga.App. 469, 190 S.E. 432 (paying patient; execution restricted to income derived from paying patients and other noncharitable sources); Morton v. Savannah Hospital, 1918, 148 Ga. 438, 96 S.E. 887 (paying patient; nonpaying patients can recover only for negligence in selection of employees). *Idaho*: Henderson v. Twin Falls County, 1935, 56 Idaho 124, 50 P.2d 597, 101 A.L.R. 1151 (paying patient). In Idaho a paying patient can recover from county hospitals but not from hospitals supported by private funds because the latter are organized with "charitable inclinations." See Wilcox v. Idaho Falls Latter Day Saints Hospital, 1938, 59 Idaho 350, 82 P.2d

849; (1940) 2 La.L.Rev. 544, (1939) 33 Ill.L.Rev. 601 (paying patient not allowed to recover). *Oklahoma*: Sisters of The Sorrowful Mother v. Zeidler, 1938, 183 Okl. 454, 82 P.2d 996 (paying patient); Gable v. Salvation Army, 1940, 186 Okl. 687, 100 P.2d 244; 39 Mich.L. Rev. 147 (stranger); *Utah*: Sessions v. Thomas D. Dee Memorial Hospital Ass'n, 1938, 94 Utah 460, 78 P.2d 645, 38 Col.L.Rev. 1485, (1939) 33 Ill.L.Rev. 601 (paying patient); Brigham Young University v. Lillywhite, 10 Cir., 1941, 118 F.2d 836, 842, 137 A.L.R. 598 (student allowed to recover).

39 See the Tucker (Alabama) and Nicholson (Florida) cases cited in the preceding note.

40 *Colorado*: O'Connor v. Boulder Colorado Sanitarium Ass'n, 1939, 105 Colo. 259, 96 P.2d 835, 133 A.L.R. 819, noted in (1940) 20 B.U.L.Rev. 330, 53 Harv.L.Rev. 873, 24 Minn.L.Rev. 696, 16 Notre Dame Lawyer 126, 12 Rocky Mt.L.Rev. 135, 7 U. of Chi.L.Rev. 567, 3 U. of Detroit L.J. 164, 1 Wash. & Lee L.Rev. 257; cf. St. Mary's Academy of Sisters v. Solomon, 1925, 77 Colo. 463, 238 P. 22, 42 A.L.R. 964 (stranger—recovery allowed, but not execution against funds of charity). *Tennessee*: Vanderbilt University v. Henderson, 1938, 23 Tenn. App. 135, 127 S.W.2d 284; cf. McLeod v. St. Thomas Hospital, 1936, 170 Tenn. 423, 95 S.W.2d 917; (1937) 14 Tenn.L. Rev. 468 (visitor).

In Louisiana the plaintiff may sue the insurance company directly and the defense of charity is not available. Lusk v. United States Fidelity & Guaranty Co., La.App.1941, 199 So. 666.

41 Morton v. Savannah Hospital, 1918, 148 Ga. 438, 96 S.E. 887; Robertson v. Executive Committee of Baptist Convention, 1937, 55 Ga.App. 469, 190 S.E. 432; Baptist Memorial Hospital v. Couillens, 1940, 176 Tenn. 300, 140 S.W.2d 1088; Gamble v. Vanderbilt University, 1918, 138 Tenn. 616, 200 S.W. 510, L.R.A. 1918C, 875; Lincoln Memorial University v. Sutton, 1931, 163 Tenn. 298, 43 S.W.2d 195. Mississippi seems to follow the same rule, Rhodes v. Millsaps College, 1937, 179 Miss. 596, 176 So. 253; (1938) 11 Miss.L.J. 239. See note 34 supra for a similar rule in Massachusetts and Pennsylvania.

last referred to seems clearly toward unqualified responsibility. When its weight is added to that of the jurisdictions which impose full liability, the apparent preponderance of authority supporting *immunity* disappears.

In thirteen of the remaining states, apparently, strangers are allowed to recover, but beneficiaries are denied relief.[42] This constitutes, numerically, perhaps the slightly largest group. But in such a kaleidoscope of result and reasoning it hardly can be said

[42] *Connecticut*: Cohen v. General Hospital Soc. of Connecticut, 1931, 113 Conn. 188, 154 A. 435 (stranger); Hearns v. Waterbury Hospital, 1895, 66 Conn. 98, 33 A. 595, 31 L.R.A. 224 (patient); Cashman v. Meriden Hospital, 1933, 117 Conn. 585, 169 A. 915 (patient). *Indiana*: Winona Technical Institute v. Stolte, 1909, 173 Ind. 39, 89 N.E. 393 (workman); St. Vincent's Hospital v. Stine, 1924, 195 Ind. 350, 144 N.E. 537, 33 A.L.R. 1361 (paying patient). *Iowa*: Andrews v. Young Men's Christian Ass'n, 1939, 226 Iowa 374, 284 N.W. 186; 24 Iowa L.Rev. 769, 87 U. of Pa.L.Rev. 1015 (workman); Mikota, Adm'r, v. Sisters of Mercy, 1918, 183 Iowa 1378, 168 N.W. 219 (paying patient). *Louisiana*: Lusk v. United States Fidelity & Guaranty Co., La.App. 1941, 199 So. 666 (visitor in hospital); Bougon v. Volunteers of America, La. App.1934, 151 So. 797 (stranger); Jordan v. Touro Infirmary, La.App. 1922, 123 So. 726, (paying patient). *Michigan*: Bruce v. Central Methodist Episcopal Church, 1907, 147 Mich. 230, 110 N.W. 951, 10 L.R.A.,N.S., 74, 11 Ann.Cas. 150 (workman); Bruce v. Henry Ford Hospital, 1931, 254 Mich. 394, 236 N.W. 813 (paying patient); Downes v. Harper Hospital, 1894, 101 Mich. 555, 60 N.W. 42, 25 L.R.A. 602, 45 Am.St.Rep. 427 (paying patient). *Nebraska*: Marble v. Nicholas Senn Hospital Ass'n, 1918, 102 Neb. 343, 167 N.W. 208 (invitee); Wright v. Salvation Army, 1933, 125 Neb. 216, 249 N.W. 549 (invitee); Duncan v. Nebraska Sanitarium & Benevolent Ass'n, 1912, 92 Neb. 162, 137 N.W. 1120, 41 L.R.A.,N.S., 973, Ann.Cas., 1913E 1127 (patient). *New Jersey*: Daniels v. Rahway Hospital, 1932, 160 A. 644, 10 N.J.Misc. 585 (stranger); D'Amato v. Orange Memorial Hospital, 1925, 101 N.J.L. 61, 127 A. 340 (paying patient); Bianchi v. South Park Presbyterian Church, 1939, 123 N.J.L. 325, 8 A. 2d 567, 124 A.L.R. 808; (1940) 6 U. of Pitt.L.Rev. 122 (beneficiary). *North Carolina*: Cowans v. North Carolina Baptist Hospitals, Inc., 1929, 197 N.C. 41, 147 S. E. 672 (servant); Herndon v. Massey, 1940, 217 N.C. 610, 8 S.E.2d 914, (1941) 19 N.C.L.Rev. 245 (student). *Ohio*: Pflugfelder v. Convent of Good Shepherd, 1936, 55 Ohio App. 158, 9 N.E.2d 4 (stranger); Cullen v. Schmit, 1942, 139 Ohio St. 194, 39 N.E.2d 146 (beneficiary—invitee); Burgie v. Muench, 1940, 65 Ohio App. 176, 29 N.E.2d 439 (beneficiary—invitee); Taylor v. Flower Deaconess Home and Hospital, 1922, 104 Ohio St. 61, 135 N.E. 287, 23 A.L.R. 900 (paying patient). *Rhode Island* (by statute): Basabo v. Salvation Army, 1912, 35 R.I. 22, 85 A. 120, 42 L.R.A., N.S., 1144 (stranger); R.I.Gen.Laws (1938) c. 116, § 95 (beneficiaries); cf. Glavin v. Rhode Island Hospital, 1879, 12 R.I. 411, 34 Am.Rep. 675, which held that beneficiaries can recover, but this was changed by the statute cited. *Texas*: Armendarez v. Hotel Dieu, Tex.Civ. App. 1912, 145 S.W. 1030; Hotel Dieu v. Armendariz, Tex.Civ.App. 1914, 167 S.W. 181, affirmed, Tex.Com.App.1919, 210 S.W. 518; City of McAllen v. Gartman, Tex.Civ.App.1935, 81 S.W.2d 147 (paying patient); cf. St. Paul's Sanitarium v. Williamson, Tex.Civ.App.1914, 164 S.W. 36 (paying patient allowed to recover for selection of an inexperienced nurse to perform a particular task). *Virginia*: Hospital of St. Vincent of Paul v. Thompson, 1914, 116 Va. 101, 81 S.E. 13, 51 L.R.A.,N.S., 1025 (invitee); Weston's Adm'x v. Hospital of St. Vincent of Paul, 1921, 131 Va. 587, 107 S. E. 785, 23 A.L.R. 907. *Washington*: Heckman v. Sisters of Charity of House of Providence, 1940, 5 Wash.2d 699, 106 P.2d 593 (invitee); Susmann v. Young Men's Christian Ass'n, 1918, 101 Wash. 487, 172 P. 554 (student); Magnuson v. Swedish Hospital, 1918, 99 Wash. 399, 169 P. 828 (patient).

The remaining seven states apparently have no decisions involving strangers, but hold that the charity is not liable to beneficiaries. *Arizona*: Southern Methodist Hospital and Sanatorium v. Wilson, 1935, 45 Ariz. 507, 46 P.2d 118. *Maine*: Jensen v. Maine Eye & Ear Infirmary, 1910, 107 Me. 408, 78 A. 898, 33 L.R.A., N.S., 141. *Mississippi*: Mississippi Baptist Hospital v. Moore, 1930, 156 Miss. 676, 126 So. 465, 67 A.L.R. 1106. *Montana*: Cf. Borgeas v. Oregon Short Line R. R., 1925, 73 Mont. 407, 236 P. 1069 (patient in hospital supported by company and employees). *Nevada*: Bruce v. Young Men's Christian Ass'n, 1929, 51 Nev. 372, 277 P. 798. *West Virginia*: Cf. Roberts v. Ohio Valley General Hospital, 1925, 98 W.Va. 476, 127 S.E. 318, 42 A.L.R. 968 (paying patient allowed to recover in absence of affirmative proof of

there is a preponderant "weight of authority." The plurality, if any, is highly unstable, and this is accentuated by the conflict, already noted, concerning who is beneficiary, who stranger.[43]

The mere survey of the modifications in result raises question concerning their consistency and validity. A survey of reasons given to sustain them and reject others replaces doubt with conviction. The task has been done frequently, both judicially and extrajudicially.[44] In its negative aspects the two types have done it equally well. Courts accepting one modification, but not another or others, effectually destroy the latters' foundation.[45] And it seems to make little difference, for effective destruction, whether one or another modification is taken for rejection. What is accepted by one court is demolished by another. A few seem to demolish all, yet retain one or some.[46] The difference between the courts which have so handled the matter and the so-called academicians, with the courts accepting their view, is that the latter have carried their thinking through to its consistent and general conclusion, namely, that the anomalous rule of immunity is one, not for modification, but for abandonment.[47]

Because others have done it so well and so often, we shall not make an extensive review of the reasons and policies supporting and working against general immunity. A few may be noted.

### D. Policies Supporting and Negating Immunity

For it are various commonly advanced arguments: Liability would violate the donor's intention; misappropriate the funds to unauthorized purposes and to persons not within the intended class of beneficiaries; and in effect indemnify the trustees, if the charity is organized as a trust, against the consequences of their own or their subordinate's misconduct. More persuasive apparently, but hardly more substantial, are the frequently expressed fears that imposing liability would dissipate the fund in damages and deprive the favored class or the public of the charity's benefit. A variant is the assumed danger that donors would be deterred from creating the charity and from adding to its funds by subsequent donations. Other considerations are mentioned, but these are the principal ones.

The confusion comes to climax when attempt is made to modify the rule in some of the ways previously mentioned and to recon-

---

due care in selection of nurse). *Wyoming*: Bishop Randall Hospital v. Hartley, 1916, 24 Wyo. 408, 160 P. 385, Ann. Cas.1918E, 1172.

For further treatment of the authorities, see Appleman, The Tort Liability of Charitable Institutions (1936) 22 A.B.A.J. 48; 10 Fletcher, Cyc.Corp. (Perm.Ed.1931) §§ 4921-41; Notes (1921) 14 A.L.R. 572, (1923) 23 A.L.R. 923, (1924) 30 A.L.R. 455, (1924) 33 A.L.R. 1369, (1926) 42 A.L.R. 971, (1929) 62 A.L.R. 724, (1930) 67 A.L.R. 1112, (1933) 86 A.L.R. 491, (1937) 109 A.L.R. 1199, (1940) 124 A.L.R. 814, (1941) 133 A.L.R. 821.

43 E. g., see Bodenheimer v. Confederate Memorial Ass'n, 4 Cir., 1934, 68 F. 2d 507, where plaintiff visiting the Confederate Soldiers' Home was held to be a beneficiary; Boeckel v. Orange Memorial Hospital, 1932, 108 N.J.L. 453, 158 A. 832, affirmed 1933, 110 N.J.L. 509, 166 A. 146; (1932) 9 N.Y.U.L.Q.Rev. 489, holding visitors to be "beneficiaries"; Bianchi v. South Park Presbyterian Church, 1939, 123 N.J.L. 325, 8 A.2d 567, 124 A.L.R. 808; (1940) 6 U. of Pitt.L.Rev. 122, where plaintiff, a member of a girl scout troop meeting in the church, was held to be a beneficiary.

44 E. g., Andrews v. Young Men's

Christian Ass'n, 1939, 226 Iowa 374, 284 N.W. 186; 24 Iowa L.Rev. 769; 87 U. of Pa.L.Rev. 1015; Tucker v. Mobile Infirmary Ass'n, 1915, 191 Ala. 572, 68 So. 4, L.R.A.1915D, 1167. See note 2 supra.

45 E. g., Powers v. Massachusetts Homoeopathic Hospital, 1 Cir., 1901, 109 F. 294, 65 L.R.A. 372 (implied waiver); Southern Methodist Hospital and Sanatorium v. Wilson, 1935, 45 Ariz. 507, 46 P.2d 118 (respondeat superior); Hearns v. Waterbury Hospital, 1895, 66 Conn. 98, 33 A. 595, 31 L.R.A. 224 (respondeat superior); Wilcox v. Idaho Falls Latter Day Saints Hospital, 1938, 59 Idaho 350, 82 P.2d 849 (implied waiver); Weston's Adm'x v. Hospital of St. Vincent of Paul, 1921, 131 Va. 587, 107 S.E. 785, 23 A.L.R. 907 (public policy); Love v. Nashville Agricultural and Normal Institute, 1922, 146 Tenn. 550, 243 S.W. 304, 23 A.L.R. 887.

46 Cf. Andrews v. Young Men's Christian Ass'n, 1939, 226 Iowa 374, 284 N.W. 186; Nicholson v. Good Samaritan Hospital, 1940, 145 Fla. 360, 199 So. 344, 133 A.L.R. 809.

47 See Harper, Torts (1933) § 294, at 657; Prosser, Torts (1941) 1079; Hansen, Damage Liability of Charitable Corporations (1935) 19 Marq.L.Rev. 92.

cile the modifications with these reasons. It seems not to be recognized that all apply with equal force, on any basis of logic, whether the violation, misappropriation, dissipation or deterrence takes place through the negligent action of (1) the board of directors, (2) the principal or managing officers, (3) the operating superiors, as distinguished from the managers of finance and general policy, or (4) employees and representatives generally acting within their actual or apparent functions. There is the same failure to see that dissipation and deterrence also take place equally, whether damages are paid to a stranger or to a beneficiary and regardless of who falls within each class. Damage suits by employees, visitors, special nurses, physicians, and members of the general public are apt to be as frequent and as serious as those by patients. If, too, the donor's intention is controlling and he does not intend the fund to be expended for damages, but only for the purposes he specifies, the violation of his intention and the misappropriation from the objects of the trust are as great when a "stranger" collects damages as when a patient does.

These reasons therefore are not consistent with any of the modifications ordinarily made. They support general exemption and they negative one form or instance of immunity as much as another. The only sound arguments from them would be, first, for total immunity; second, for selection of the smallest class of claimants and the smallest or least-likely-to-be negligent group of agents or representatives, to whom and by whom liability would be incurred. The latter would reduce to the minimum the volume of dissipation and the deterrent effect, but would not escape, in a logical sense, violation of the donor's intention or the ultra vires effect of so applying the fund.

Taking the reasons for their logical consequence—total immunity—we find them not convincing in the light of modern conditions, both in the law and in philanthropy. Whatever its form, the doctrine of ultra vires, so strong in the nineteenth century, has shrunk constantly both in the law of private corporations[48] and in that of trusts.[49] This is true especially concerning responsibility for tort.[50] From authority as a controlling premise, no corporation and no trust could possibly be guilty of tort. Corporate charters and trust indentures do not authorize corporate representatives or trustees to commit assaults, libel, slander, and negligent torts. But authority has given way to respondeat superior and "course of employment," for reasons not necessary to restate, in the highly organized society of this century. The surrender has been greater by corporations than by trusts, but with the latters' advent into business[51] the old lines of limitation have been shaken. Breaches have been made too in the trustee's inability to secure indemnity from the fund and in the claimant's inability to reach it.[52] Apart from charity organized in trust or corporate form, the law of ultra vires action as defeating liability has moved on from *authorized* action to conduct incidental to the enterprise and the actual or apparent function of the actor as the line of demarcation.[53] There is no longer the same broad climate of exemption as existed when the "rule" of immunity for charitable institutions took form. Nor is the law of negligence in its swaddling clothes as it was then.

There are also reasons which take force away from the fears of dissipation and deterrence of donations. No statistical evidence has been presented to show that the mortality or crippling of charities has been greater in states which impose full or partial liability than where complete or substantially full immunity is given. Nor is there evidence that deterrence of donation has been greater in the former. Charities seem to survive and increase in both, with little apparent heed to whether they are liable for torts or difference in survival capacity.

Further, if there is danger of dissipation, insurance is now available to guard against it and prudent management will provide the protection. It is highly doubtful that any substantial charity would be destroyed or

---

[48] 7 Fletcher, Cyc.Corp. (Perm.ed.1931) c. 40.

[49] 3 Bogert, Trusts and Trustees (1935) §§ 713, 725.

[50] 10 Fletcher, Cyc.Corp. (Perm.ed. 1931) § 4902. There has been a similar contraction of ultra vires as a defense to corporate criminal liability. 10 Fletcher, Cyc.Corp. (Perm.ed.1931) § 4959;

cf. American Medical Association v. United States, —— App.D.C. ——, 130 F.2d 233, 1942.

[51] 16 Fletcher, Cyc.Corp. (Perm.ed. 1931) c. 66. See note 11 supra.

[52] See note 11 supra.

[53] 7 Fletcher, Cyc.Corp. (Perm.ed. 1931) § 3401.

donation deterred by the cost required to pay the premiums. While insurance should not, perhaps, be made a criterion of responsibility, its prevalence and low cost are important considerations in evaluating the fears, or supposed ones, of dissipation or deterrence.[54] What is at stake, so far as the charity is concerned, is the cost of reasonable protection, the amount of the insurance premium as an added burden on its finances, not the awarding over in damages of its entire assets.

Against this, we weigh the cost to the victim of bearing the full burden of his injury. In line with this view may be mentioned the general extension of workmen's compensation acts[55] and social security legislation[56] to include the employees of charitable institutions. Also, as some of the more recent cases point out, much of modern charity or philanthropy is "big business" in its field. It therefore has a capacity for absorption of loss which did not exist in the typical nineteenth century small hospital or college. While the larger hospitals generally are not operated for profit, much of their revenue comes from paying patients, who are either not at all or are only partially beneficiaries on a charitable basis.[57] To that extent, perhaps, the institutions should not be regarded as charitable and the paying patient, if he is injured and cannot recover, pays twice that others may have healing where he has injury.

Finally, in recent years the real deterrents to donation have been taxation, despite contrary inducements in deductions, and the fears of persons well placed for the future of large individual accumulations of property, arising from economic trends much more fundamental than making charitable institutions liable for their torts.

The chief arguments, therefore, for sustaining the immunity, namely, ultra vires action marked out by authority or intent of the donor and danger of destroying or preventing the creation of charitable institutions, no longer have, if they ever had, compelling effect. Changes in the law and in the organization and mores of community life have taken away their major force. That is true, whether for full or for modified immunity.

As against the factors favoring it, may be mentioned the tendency of immunity to foster neglect and of liability to induce care and caution; the departure from the general rule of liability; the anomaly of exempting charitable corporations and trust funds, when charity is not a defense to others; the injustice of giving benefit to some at the cost of injury to others and of the injured individual's having to bear the loss wrongfully inflicted upon him, at a time when the direction of the law is toward social distribution of losses through liability for fault, liability without fault, and legislation which gives the person disabled to work what is commonly but inaccurately called "social" security. There are others we do not stop to mention.

It is hardly necessary to discuss the various theories of exemption or their application in various modifications. Whether immunity be founded on the "trust fund" theory,[58] the rule of respondeat superior,[59] so-

[54] See note 40 supra. For cases holding that insurance does not affect the immunity, see, e. g., Williams' Adm'x v. Church Home, 1928, 223 Ky. 355, 3 S. W.2d 753, 62 A.L.R. 721; Enman v. Boston University, 1930, 270 Mass. 299, 170 N.E. 43; Herndon v. Massey, 1940, 217 N.C. 610, 8 S.E.2d 914; (1941) 19 N.C. L.Rev. 245.

[55] Harper, Torts (1933) c. 11; Prosser, Torts (1941) c. 12.

[56] A Symposium; Old-Age Security and the Welfare Titles of the Social Security Act (1936) 3 Law & Contem.Prob. 173-334.

[57] E. g., Silva v. Providence Hospital of Oakland, 1939, 14 Cal.2d 762, 97 P.2d 798.

[58] Arkansas Valley Co-op. Rural Electric Co. v. Elkins, 1940, 200 Ark. 883, 141 S.W.2d 538; St. Mary's Academy of Sisters v. Solomon, 1925, 77 Colo. 463, 238 Pac. 22, 42 A.L.R. 964; Parks v. Northwestern University, 1905, 218 Ill. 381, 75 N.E. 991, 2 L.R.A.,N.S., 556, 4 Ann.Cas. 103; Webb v. Vought, 1929, 127 Kan. 799, 275 P. 170; Jensen v. Maine Eye & Ear Infirmary, 1910, 107 Me. 408, 78 A. 898, 33 L.R.A.,N.S., 141; Perry v. House of Refuge, 1885, 63 Md. 20, 52 Am.Rep. 495; McDonald v. Massachusetts General Hospital, 1876, 120 Mass. 432, 21 Am.Rep. 529; Downes v. Harper Hospital, 1894, 101 Mich. 555, 60 N.W. 42, 25 L.R.A. 602, 45 Am.St.Rep. 427; Eads v. Young Women's Christian Ass'n, 1930, 325 Mo. 577, 29 S.W.2d 701; Gable v. Sisters of St. Francis, 1910, 227 Pa. 254, 75 A. 1087, 136 Am.St.Rep. 879; Adams v. University Hospital, 1907, 122 Mo.App. 675, 99 S.W. 453; Abston v. Waldon Academy, 1907, 118 Tenn. 24, 102 S.W. 351, 11 L.R.A.,N.S., 1179.

[59] Southern Methodist Hospital and Sanatorium v. Wilson, 1935, 45 Ariz.

called "public policy,"[60] or the more indefensible doctrine of "implied waiver,"[61] is not for us a controlling consideration. At bottom, except possibly for the last, these come down to the same thing, supported by the same considerations. They are merely different names for the same idea, cast according to the predilection of the user for technical or for broader terminology. The "trust fund theory" comprehends all that is involved in "public policy," with only an apparent difference in approach. This is true likewise of "respondeat superior" and "implied waiver." In any event the result is a departure from general, and we think right, principles of liability. The differences in foundation do not affect even the extent of the departure. We think it should be complete and that charitable corporations should respond as others do for the wrongs inflicted by persons who act in their behalf about their business and within the course of their duties, actual or apparent. Immunity, whether full or partial, is to be granted only when compelling reason requires it. If there has been, there is no longer such reason. The reasons which support governmental immunity, where it remains, are largely different, but even so they too give way gradually to liability imposed or permitted by legislation.[62]

### E. The So-Called "Stranger-Beneficiary" Distinction

We think it does not matter whether the plaintiff is stranger or beneficiary. Whether the one or the other is denied recovery, the distinction is without justice or legal justification. To give it to a stranger but not to a beneficiary makes the latter accept succor at the risk of greater harm. When it occurs he bears a burden which should fall on all alike, not on him alone. On the other hand, no one has the right to have cure or care at the cost of harm inflicted upon another. To allow recovery to the beneficiary, but deny it to the stranger, would unload on the latter in some part not only the cost of care and cure, but the cost of injury to the former.

Furthermore, it is not easy to hew to the line and the chips do not fall consistently where they should lie. The distinction is not tenable upon any of the foundations asserted to support the immunity. Because the court's division is on this line, we spell out the matter, though others have done it beyond need of repetition.

If immunity is founded on some form of ultra vires premise, there is no room for treating strangers and beneficiaries differently. Paying damages "violates the donors [assumed] intention" and "misappropriates the fund to unauthorized purposes" as much in one case as in the other. If the matter is regarded as "diverting the fund to persons not within the class intended for aid," it is impossible to assume that the donor intends everyone except the special object of his

---

507, 46 P.2d 118; Hearns v. Waterbury Hospital, 1895, 66 Conn. 98, 33 A. 595, 31 L.R.A. 224; Taylor v. Flower Deaconess Home and Hospital, 1922, 104 Ohio St. 61, 135 N.E. 287, 23 A.L.R. 900; Paterlini v. Memorial Hospital Ass'n, 3 Cir., 1918, 247 F. 639, certiorari denied 1918, 246 U.S. 665, 38 S.Ct. 334, 62 L. Ed. 929; Bachman v. Young Women's Christian Ass'n, 1922, 179 Wis. 178, 191 N.W. 751, 30 A.L.R. 448; Union Pacific Ry. v. Artist, 8 Cir., 1894, 60 F. 365, 23 L.R.A. 581.

60 E. g., Emery v. Jewish Hospital Ass'n, 1921, 193 Ky. 400, 236 S.W. 577 (relied on all grounds); Duncan v. Nebraska Sanitarium & Benevolent Ass'n, 1912, 92 Neb. 162, 137 N.W. 1120, 41 L. R.A.,N.S., 973, Ann.Cas.1913E, 1127; D'Amato v. Orange Memorial Hospital, 1925, 101 N.J.L. 61, 127 A. 340; Lindler v. Columbia Hospital, 1914, 98 S.C. 25, 81 S.E. 512; Weston's Adm'x v. Hospital of St. Vincent of Paul, 1921, 131 Va. 587, 107 S.E. 785, 23 A.L.R. 907.

61 Powers v. Massachusetts Homoeopathic Hospital, 1 Cir., 1901, 109 F. 294,

65 L.R.A. 372; Stonaker v. Big Sisters Hospital, 1931, 116 Cal.App. 375, 2 P.2d 520; Wilcox v. Idaho Falls Latter Day Saints Hospital, 1938, 59 Idaho 350, 82 P.2d 849; St. Vincent's Hospital v. Stine, 1924, 195 Ind. 350, 144 N.E. 537, 33 A.L.R. 1361; Mikota, Adm'r v. Sisters of Mercy, 1918, 183 Iowa 1378, 168 N.W. 219; Bruce v. Central Methodist Episcopal Church, 1907, 147 Mich. 230, 110 N.W. 951, 10 L.R.A.,N.S., 74, 11 Ann.Cas. 150; Bruce v. Young Men's Christian Ass'n, 1929, 51 Nev. 372, 277 P. 798; Hospital of St. Vincent of Paul v. Thompson, 1914, 116 Va. 101, 81 S. E. 13, 51 L.R.A.,N.S., 1025.

62 Borchard, Government Liability in Tort (1924) 34 Yale L.J. 1, 129, 229; Harper, Torts (1933) § 295; Warp, The Law and Administration of Municipal Tort Liability (1942) 28 Va.L.Rev. 360. Governmental immunity also has been used for the exemption of charities from liability. See, e. g., University of Louisville v. Hammock, 1907, 127 Ky. 564, 106 S.W. 219, 221, 14 L.R.A.,N.S., 784, 128 Am.St.Rep. 355.

bounty to have reparation. If any assumption were justified, it would be exactly the contrary one. In reason the departure, in this respect, would be the greater when a stranger recovers. The person for whom the charity is founded at least is within the donor's contemplation, as the stranger may not be. And he is there as an object of help, not as one whose last state is to be made worse than his first. The distinction therefore applies ultra vires backwards and doing so undermines that narrow premise entirely.

No more tenable foundation exists in considerations of preserving the fund, preventing its dissipation, depriving the intended class or the public of its succor, cutting off creative or sustaining donations, and the like. The reasons already stated to show that these do not support unqualified immunity apply with equal force to a limited one, whatever its form or extent. If damages dissipate the fund or deter donations, they do so equally whether paid to a stranger or to a beneficiary. When account is taken of the numbers in both classes and the probable burden of risk toward each; the heavier risk perhaps is incurred in favor of strangers.

In hospitals, for instance, the stranger group generally includes all except patients, in some states all except nonpaying patients. Physicians, nurses, including special ones, those regularly employed and others in training, orderlies, laboratory technicians and assistants, business officers and office employees, maids, janitors, kitchen and cleaning help, all who render aid to the patient directly or indirectly, make their livelihoods doing so, and carry on the work of the institution, are within the "stranger" class. So is the minister or priest who comes to give comfort or administer the last sacrament. Likewise the relative, friend or stranger who visits the sick. Delivery men and others who have business to do on the premises may recover if they are injured. The ambulance driver or operator of the hospital's truck is protected, as is the person he negligently runs down on the street.[63] All these the distinction favors at the expense of the only person the fund is created and maintained to aid. He alone is excluded. He alone enters at the risk of life and limb, of illness or injury to be aggravated, when he seeks cure, by the careless conduct of others who themselves are protected against like risk.

If preservation of the fund or encouragement of donation required immunity, neither could justify the distinction. If the charity can assume the risk as to all the rest of the world and survive, it can do so for those it is designed to help. Neither the number of claims nor their amount will be greater in their behalf than for others. It is probable both would be smaller, because the class is so and because it is present in circumstances ordinarily conducive to precaution and care.

The remaining foundations also crumble under the distinction. Inappropriate to the charitable corporation, as has been shown, is the idea that recovery in effect indemnifies the trustees against the consequences of their own or their subordinates' wrongs. It is equally so whether stranger or beneficiary is reimbursed.

Finally, the idea of waiver is advanced, namely, that the beneficiary by accepting the tendered aid impliedly agrees that is all he may accept and waives any right of recourse for wrong done, while strangers do not do so. The notion that there is any such agreement or waiver is entirely fictional. In some instances the fiction is based upon impossibility, as when a patient is unconscious from whatever cause when he enters. So, also, when he is received not by arrangement of his own but of others and has no voice or choice in the terms. Infants of tender years, if not those more mature, and insane persons have no legal capacity so to will away their rights.[64] Nor does the ordinary conscious adult intend to do so. Usually he is ill or hurt. He does not haggle about terms. He expects care, not carelessness. Few hospitals would announce a policy of requiring such a waiver as a condition of entrance, and few patients would enter under such a condition unless forced to do so by poverty. In that case there could be no real choice. The idea of waiver, therefore, as implied from reception of benefit amounts merely to imposing immunity as a rule of law in the guise of assumed contract or renunciation of right, when all other reasons are found insufficient to support the distinction. When the benefit turns into injury which aggravates the original ill, all basis for the waiver and all "consideration" for it fail.

It remains only to point out more fully the effects of the conflict in deciding who is

---

[63] See note 42 supra.
[64] E. g., Shane v. Hospital of Good Samaritan, 1934, 2 Cal.App.2d 334, 37 P.2d 1066.

stranger and who is beneficiary. The patient cannot recover, but the visiting spouse or parent may do so, notwithstanding he may pay the patient's bills. The visitor is an invitee, the patient is in a class worse placed than the trespasser. Cf. Radio Cab., Inc., v. Houser, —— App.D.C. ——, 128 F.2d 604, 1942. The physician receives facilities for conducting his work. He seldom, if ever, pays for hospital connections. Often he is paid for accepting them. Without them he is worse than a ship without a rudder. Yet he is "stranger," not "beneficiary." So it is with nurses, orderlies, maids, and all who do the hospital's work. They receive livelihood from it year after year, perhaps for a lifetime, while the patient normally remains only for days or weeks. Yet they are "strangers," he is "beneficiary." Hospitals and schools are notably dependent upon income received from paying patients and students. Some pay the full cost of their care, except that overhead figured per capita for all, paying and nonpaying, makes an apparent deficiency. Others who pay only in part are beneficiaries only in part. Without these funds the institution could not operate. Beneficiaries who pay have a share in maintaining the fund and the work.

Abolition of the immunity as to the paying patient is justified as the last short step but one to extinction. Retention for the nonpaying patient is the least defensible and most unfortunate of the distinction's refinements. He, least of all, is able to bear the burden. More than all others, he has no choice. He is the last person the donor would wish to go without indemnity. With everyone else protected, the additional burden of protecting him cannot break the trust. He should be the first to have reparation, not last and least among those who receive it. So stripped of foundation, the distinction falls. It should fall in line with, not away from, the trend which has brought it about. The immunity should go and the object of the charity should be placed on a par with all others.

### F.  Summary

We think, therefore, the trial court was right in allowing plaintiff to recover. But this is not, as it held, because she was a stranger to the charity. We do not undertake to say whether she was stranger or beneficiary. She was trained in the hospital. She worked there many years. When she did, it was at the hospital's summons and she was, partially at least, under its control. In a sense she was beneficiary more than most patients. We think she should recover because she was injured by the negligence of the hospital's employee while the latter was discharging its business in the course of her employment.

We return therefore to the starting point. The law's emphasis ordinarily is on liability, not immunity, for wrongdoing. Respondeat superior has widened it in an institutionally, and to a large extent corporately, organized community. Charity is generally no defense. When it has been organized as a trust or corporation, emphasis has shifted from liability to immunity. The conditions of law and of fact which created the shift have changed. The rule of immunity is out of step with the general trend of legislative and judicial policy in distributing losses incurred by individuals through the operation of an enterprise among all who benefit by it rather than in leaving them wholly to be borne by those who sustain them. The rule of immunity itself has given way gradually but steadily through widening, though not too well or consistently reasoned, modifications. It is disintegrating. Each modification has the justification that it is a step in result, if not in reason, from the original error toward eventual correction. As more and more steps are taken, correction becomes more complete. The process is nearing the end. This leaves the steps untaken standing out as the more anomalous.

In taking this view we are not unmindful that charitable institutions perform a high service in the community. In days when the state was less mindful of individual need, they gave a helping hand not otherwise held out to large numbers of people. They still do so. They recently have faced, and still face grave problems. Purse strings no longer are loose, as they were before world wars and world-wide depressions. But individuals and business institutions face similar uncertainties. It does not recompense injured persons that the loss is inflicted by charitable institutions, nor should they alone bear it because all together face a hard future. For reasons already stated we do not believe the survival of charities will turn on whether or not they must answer for their wrongs to persons they are formed to help. There may be some added expense of operation. It may be no more than the cost of litigating these

claims over and over, for the issue will not down. Insurance must be carried to guard against liability to strangers. Adding beneficiaries cannot greatly increase the risk or the premium. This slight additional expense cannot have the consequences so frequently feared in judicial circles, but so little realized in experience. To offset the expense will be the gains of eliminating another area of what has been called "protected negligence" and the anomaly that the institutional doer of good asks exemption from responsibility for its wrong, though all others must pay. The incorporated charity should respond as do private individuals, business corporations and others, when it does good in the wrong way.

The judgment is affirmed.