WILLIAMS ET AL., APPELLANTS, *v.* FIRST UNITED CHURCH OF CHRIST ET AL., APPELLEES.

[Cite as Williams v. First United Church of Christ (1973), 40 Ohio App. 2d 187.]

(No. C-72410—Decided April 9, 1973.)

*Messrs. Cohen, Todd, Kite & Spiegel* and *Mr. Marshall C. Hunt, Jr.,* for appellants.

*Messrs. McIntosh, McIntosh & Knabe,* for appellees.

SHANNON, J. This is an appeal from a final order of the Court of Common Pleas of Hamilton County granting summary judgment in favor of defendant First United Church of Christ, one appellee herein.

Dorothy Williams filed a petition in which she stated a claim for damages for personal injuries against the First United Church of Christ and the Dan Beard Council, Boy Scouts of America. Stephen Williams, the husband of Dorothy Williams, filed a petition in which he sought damages for loss of consortium. Ultimately, the two causes

of action were consolidated and summary judgment for the defendant Dan Beard Council, Boy Scouts of America, the other appellee, was rendered.

First United Church of Christ moved for a summary judgment in its favor as to the consolidated claims on the ground that the church was immune from liability for negligence by virtue of its being a charitable and religious organization. This appeal stems from the order granting the motion.

In her petition, Dorothy Williams avers that on November 9, 1966, the church was engaged in operating a bazaar or social for profit upon premises of the church at which the general public was expressly invited. She claims that she attended the function and, while seated in the social room maintained by the church, she was injured when struck on the neck and shoulders by a coat rack which fell upon her. She alleged that the church was negligent in not maintaining the coat rack so as to prevent it from falling and in failing to provide her with a reasonably safe place to sit.

In its answer, the church stated that it is a corporation not for profit operating a church and conducting religious services, and that on November 9, 1966, it operated a bazaar or social as part of its church functions. It denied all other allegations of the plaintiff. Further, the church asserted a second defense setting forth its claim of immunity from tort liability because of its status as an eleemosynary institution.

Incident to its motion for summary judgment, the church presented parts of a deposition given by Dorothy Williams to establish that on November 9, 1966, Mrs. Williams was a member of the church; that she was working at the bazaar, without pay; that she was serving in the dining room; that she paid for her own dinner; and that the purpose of the function was to raise money to augment other funds to operate the church.

Upon the state of the record before us, it would be possible for this court to dispose of this appeal upon the narrow question of whether there exists a genuine issue of ma-

terial fact which would obviate the rendition of a summary judgment; that is, must a trier of the facts determine whether the bazaar or social was operated for a profit? We have determined, however, to decide the case on a broader ground because a remand for trial without a determination of the salient issue of the circumstances under which a church is immune from liability as a religious organization would be relatively ineffectual.

Beyond cavil, a charitable institution, including a religious organization, which is not a hospital, has under Ohio law some immunity from liability for negligence.

*Avellone* v. *St. John's Hospital,* 165 Ohio St. 467, decided July 18, 1956, involved an action to recover damages for personal injuries sustained while the plaintiff was a patient in the hospital. The defendant hospital pleaded, as a separate defense, that as a corporation not for profit it operated a charitable hospital at a loss, the deficit being made up by gifts, and prayed that the petition be dismissed. Plaintiff demurred to the separate defense "on the ground that on its face it is insufficient in law." The Court of Common Pleas overruled the demurrer, the plaintiff pleaded no further, the action was dismissed and, thereafter, the Court of Appeals affirmed that judgment of the trial court.

The Supreme Court reversed the judgment of the Court of Appeals, declaring in paragraph one of the syllabus:

"1. A corporation not for profit, which has as its purpose the maintenance and operation of a hospital, is, under the doctrine of *respondeat superior,* liable for the torts of its servants. * * *"

The majority opinion examines in detail the law on immunity of organizations not for profit which maintain and operate hospitals, tracing it from its foundation in America upon the "dictum of Lord Cottenham in *The Feoffees of Heriot's Hospital* v. *Ross,* 1846, 12 Clark & Fin., 507, 513, 8 Eng. Reprint, 1508" to the then recent decision in *Newman, a Minor,* v. *Cleveland Museum of Natural History* (1944), 143 Ohio St. 369.

In disposing of *Avellone, supra,* the court referred fre-

quently to the case of *President and Directors of Georgetown College* v. *Hughes* (D. C. Cir.), 130 F. 2d 810, and remarked, at page 476 of its opinion:

"We cannot state our general position on this question [the rule of immunity] more clearly than did Judge Rutledge state his as follows:

" 'The law's emphasis ordinarily is on liability, not immunity, for wrongdoing. *Respondeat superior* has widened it in an institutionally, and to a large extent corporately, organized community. *Charity is generally no defense.*' " (Emphasis ours.)

Judge Putnam, in his dissent in *Avellone, supra* at 478, stated flatly:

"I am not in favor of changing the Ohio rule of limited liability of charities for the torts of their employees." Then, referring to the decision reached by the majority, that is, that set forth in paragraph one of the syllabus, Judge Putnam declared, at page 479, that the new rule "cannot logically be circumscribed to be applicable to hospitals alone."

In January, 1960, the Ohio Supreme Court decided *Gibbon* v. *Y. W. C. A.*, 170 Ohio St. 280, and declared in paragraph one of the syllabus:

"1. A charitable or eleemosynary institution, other than one which has as its purpose the maintenance and operation of a hospital, is, as a matter of public policy, not liable for tortious injury except (1) when the injured person is not a beneficiary of the institution, and (2) )when a beneficiary suffers harm as a result of failure of the institution to exercise due care in the selection or retention of an employee. (*Cullen* v. *Schmit* (1942), 139 Ohio St. 194, and *Waddell, a Minor,* v. *Young Women's Christian Assn.* (1938), 133 Ohio St. 601, approved and followed.)"

The court differentiated its decision in *Gibbon, supra,* from that in *Avellone, supra.* After asserting that the rule of immunity is founded on public policy in Ohio (page 288 of the opinion), the majority queried "whether changes in public policy in this field should be judicially or legislatively declared." Then the court declared that the "compelling

reasons" to revise established policy which they found to exist in *Avellone, supra,* had "not been established" in *Gibbon, supra,* and concluded that the doctrine of *stare decisis* compelled their adherence to the old order.

In a concurring opinion, Judge Bell echoed Judge Putnam in *Avellone, supra,* saying at 295:

"I cannot, however, agree to the recognition of one rule for a charitable institution that operates a hospital and the perpetuation of a contrary rule for a charitable institution that does not."

Less than six months after deciding *Gibbons, supra,* the Supreme Court rendered its decision in *Blankenship* v. *Alter,* 171 Ohio St. 65 (June 1, 1960).

In that case, a church operated a "bingo" game on church premises for money raising purposes. Plaintiff paid an admission charge to engage in the game of chance in the hope of winning some of the prize money. When the plaintiff sat upon a metal chair supplied by the church, it, being defective, collapsed and she was injured as a result of being precipitated to the floor. The trial resulted in a jury verdict for the plaintiff. The Court of Appeals affirmed the judgment and certified the record to the Supreme Court as being in conflict with a judgment of the Court of Appeals of the eighth appellate district.

Now the portents of the remarks of Judges Putnam and Bell can be seen clearly. Laconically, the court wrote in the second paragraph of the unanimous opinion (made the first paragraph of the syllabus of the case) that:

"Immunity from civil liability for negligence accorded to charitable institutions, including religious organizations, depends upon the actual devotion of the institution to charitable purposes, and a charitable institution is liable for negligence in the operation of a business enterprise for profit not directly related to the purpose for which such institution was organized."

Finally, at page 67, before affirming the Court of Appeals, the Supreme Court held that "the decision rendered by this court in the case of *Gibbon, Admr.,* v. *Young Women's Christian Assn. of Hamilton,* 170 Ohio St. 280, 164

N. E. 2d 563, is not controlling in the instant controversy."
Slightly more than a year later (June 14, 1961), the
Supreme Court decided *Bell* v. *Salvation Army*, 172 Ohio
St. 326.

The plaintiff was a paying guest in a dormitory type
hotel operated by the Salvation Army and claimed that he
suffered injury when knocked down a flight of stairs after
being physically restrained by employees of the Army from
sleeping in his room. A demurrer was sustained by the
Municipal Court, the order was affirmed by the Court of
Appeals and the Supreme Court allowed the motion to
certify.

In a per curiam opinion, the Supreme Court reversed
the judgment of the Court of Appeals and ordered that the
demurrer be overruled. The court recognized the exceptions
to the doctrine of immunity for nonhospital charitable in-
stitutions established by *Gibbon* v. *Y. W. C. A.*, *supra*, and
*Blankenship* v. *Alter, supra.*

First, the Supreme Court considered the exception to
the doctrine where the injured person is not a beneficiary
of the institution (*Gibbon, supra*).

The court also considered the exception where the
institution operates a business enterprise for profit not di-
rectly related to the purposes for which such institution
was organized. (*Blankenship, supra.*)

It was held that the allegation of "payment of a valu-
able consideration" sufficiently raised the issue of whether
the plaintiff was a nonbeneficiary of the institution and
that the petition stated facts which raised a reasonable in-
ference that the charity was operating a business enter-
prise for profit not reasonably related to the purpose for
which the institution was organized.

The singular assignment of error before us is that
the Court of Common Pleas erred in granting the motion
for summary judgment and we have concluded that it is
well taken.

Applying the rationale of *Bell* v. *Salvation Army,*
*supra*, the pleadings and additional filings sufficiently raise-
ed, first, the issue of whether Dorothy Williams was a non-

beneficiary of the defendant church. If plaintiff paid a sum of money to the defendant which was substantially commensurate with the benefits she was to receive, she was a nonbeneficiary of the church. The status of the plaintiff, Dorothy Williams, will depend upon the evidence adduced at the trial and she is entitled to an opportunity to adduce evidence to be assessed by a trier of the facts.

Secondly, the issue is raised whether the church was operating a business enterprise for profit not reasonably related to the purpose for which it was organized. It is conceivable that reasonable minds could conclude that the bazaar was a business operation for profit not related to the religious functions of the church. We are not persuaded by the argument advanced by the defendants that there must be a "substantial profit" before the institution ceases to be a charity.

We should note, in conclusion, that in our judgment the rule of limited liability of charities for the torts of their employees or agents cannot logicially be restricted to hospitals alone. If, notwithstanding this, the rule is to continue with respect to non-hospital cases, for the reasons cited in the *Gibbon* decision, it should be sparingly and strictly applied and under circumstances which fall clearly within the exceptions noted in this opinion.

The judgment of the Court of Common Pleas of Hamilton County is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

HESS, P. J., and PALMER, J., concur.